## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

DANIEL HANCHETT, as Personal
Representative of the Estate of Shannon
Hanchett, Deceased,

      Plaintiff,

v.

SHERIFF OF CLEVELAND COUNTY,
et al.,

      Defendants.

Case No. 24-CV-87-SLP

## DEFENDANT NATASHA KARIUKI, LPN'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

TABLE OF CONTENTS...... …………………………………………………………………..*i*

TABLE OF AUTHORITIES ...... …………………………………………………………*ii*

STATEMENT OF THE CASE......…………………………………………….................1

ARGUMENTS AND AUTHORITY......………………………………………………….6

PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED........................................................................ 6

    1. Plaintiff has failed to allege facts sufficient to show LPN Kariuki was deliberately indifferent to a substantial risk of serious harm to Ms. Hanchett. ........................... 7

    **2.** LPN Kariuki is immune from Plaintiff's state law tort claims under the Oklahoma Governmental Tort Claims Act and such are barred by the applicable statute of limitations. ...................................................................................................... 14

CONCLUSION ............................................................................................ 17

**TABLE OF AUTHORITIES**

CASES

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................... 6, 7

*Barrios v. Haskell Cty. Pub. Facilities Auth.,* 2018 OK 90, 432 P.3d 233 ............ 15, 16, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 6

*Birdwell v. Glanz*, Case No. 15-CV-304-TCK-FHM (N.D. Okla. Mar. 12, 2019)............ 15

*Bradshaw v. Armor Corr. Health Serv's., Inc.*, No. 17-CV-615-TCK-FHM, 2019 WL 1675148 (N.D. Okla. April 17, 2019).................................................................. 16

*Burke v. Regalado*, 2019 WL 1371144 (N.D. Okla. Mar. 26, 2019) ................................. 16

*Coppinger v. Townsend*, 398 F.2d 392 (10th Cir. 1968) ........................................ 9

*Crocker v. Armor Corr. Health Serv's, Inc.*, No. 17- CV-149-TCK-FHM, 2019 WL 2146595 (N.D. Okla. May 16, 2019).................................................................. 16

*Duffield v. Jackson*, 545 F.3d 1234 (10th Cir. 2008) ........................................... 8

*El'Amin v. Pearce*, 750 F.2d 829 (10th Cir. 1984) ............................................. 8

*Espinosa Hernandez v. Armor Corr. Health Serv's., Inc.*, 2019 WL 3069430 (W.D. Okla. Mar. 11, 2020).................................................................. 15

*Estelle v. Gamble*, 429 U.S. 97, (1976) ........................................... 7, 8, 9, 10, 11

*Farmer v. Brennan*, 511 U.S. 825 (1994) ............................................. 7, 10, 11

*Hall v. Bellmon,* 935 F.2d 1106 (10th Cir. 1991)............................................... 7

*Holland v. Glanz*, No. 16-CV-349-JED-JFJ, 2019 WL 4781869 (N.D. Okla. Sept. 30, 2019) .................................................................. 15

*Henderson v. Sec'y of Corr.*, 518 F.2d 694 (10th Cir. 1975)................................. 9

*Jones v. McCracken*, 562 F.2d 22 (10th Cir. 1977) ........................................ 8, 9

*Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) ........................................... 8

*Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009)............................................................ 11

*Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005)...................................... 10, 11, 12, 13, 14

*Nayebyazdi v. Turn Key*, Case No. 119,652 (OK CIV APP Oct. 14, 2021)................ 16, 17

*Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993)........................................................................ 8

*Paniagua v. Moseley*, 451 F.2d 228 (10th Cir. 1971) ......................................................... 9

*Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803 (10th Cir. 1999) ............................................ 8

*Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-282-CVE-JFJ, 2019 WL 238153 (N.D. Okla. Jan 16, 2019)................................................................................................................. 16

*Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) ................................................................. 8

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007) .......................... 7

*Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006) ............................................................. 10, 13

*Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976) ................................................................... 9

*Strain v. Armor Corr. Health Care Serv's., Inc.*, No. 19-CV-527-JED-FHM, 2020 WL 5026548 (N.D. Okla. Aug. 25, 2020) ....................................................................... 15, 16

*Thompson v. Norman Reg'l Hosp.*, CIV-19-113-SLP (W.D. Okla. Mar. 11, 2020) .......... 15

*Thompson v. Turn Key Health Clinics, LLC*, 5:19-CV-00113-SLP (W.D. Okla. March 11, 2020) ..................................................................................................................................... 15

RULES

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 6, 7, 17

STATUTES

42 U.S.C. § 1983..........................................................................................................................1, 14
1

Okla. Stat. Ann. tit. 12, § 95 ............................................................................................. 17

Okla. Stat. Ann. tit. 51, § 152 .......................................................................................... 15

Okla. Stat. Ann. tit. 51, § 152.1 ................................................................. 14, 15

Okla. Stat. Ann. tit. 51, § 155 ................................................................... 15, 16

Okla. Stat. Ann. tit. 59, § 567.3 ................................................................... 1, 11

Okla. Admin. Code §485:10-15-6(b) ................................................................. 1

COMES NOW Defendant Natasha Kariuki, LPN ("Defendant" or "LPN Kariuki") and moves this Court to dismiss this action against them pursuant to Fed. R. Civ. P. 12(b)(6) and the applicable statute of limitations. In support thereof, Defendant respectfully shows the following:

## STATEMENT OF THE CASE

1. On January 25, 2024, Michael Hanchett, as the Personal Representative of the Estate of Shannon Hanchett, filed a Petition alleging only a claim of deliberate indifference as to this Defendant related to Ms. Hanchett's 10-day stay at Cleveland County Justice Center ("CCJC"). *See* Doc. 1 ¶¶ 254-257; 259.

2. Pursuant the Oklahoma Nursing Practice Act, LPNs are licensed to "contribut[e] to the assessment of the health status of individuals and groups;" "participat[e] in the development and modification of the plan of care;" and 'participat[e] in the evaluation of responses to interventions," among other things. Okla. Stat. Ann. tit. 59, § 567.3a(4).

3. Pursuant to the Oklahoma Nursing Practice Act, Nurse Practitioners are licensed to diagnose and prescribe medications, treatments, and devices for acute and chronic conditions and diseases, among other things. Okla. Stat. Ann. tit. 59, § 567.3a(6); Okla. Admin. Code § 485:10-15-6(b).

4. Plaintiff claims Defendant LPN Kariuki violated Shannon Hanchett's constitutional right to receive adequate health care in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution (via 42 U.S.C. § 1983). *Id.*

5. According to the allegations contained in Plaintiff's Complaint, Ms. Hanchett began receiving medical care and treatment at CCJC on or about November 27, 2022, when

the medical intake screening was started but was unable to be completed due to Ms. Hanchett's refusal to cooperate. *See* Doc. 1, ¶¶ 20-23.

6.  Plaintiff alleges, during this medical intake screening, Ms. Hanchett only informed Danille Hay, LPN she suffered from lupus and bipolar disorder and refused to inform LPN Hay of any medications prescribed to her. *See* Doc. 1, ¶¶ 20-23.

7.  Based on the allegations contained in Plaintiff's Complaint, on November 30, 2022, Diana Myles-Henderson, LPC performed an assessment of Ms. Hanchett and, as a result, created and drafted a treatment plan that included placing Ms. Hanchett on suicide watch for her own protection "as she presented to be a threat to herself and others due to her defiance;" referring her to security; and referring her to higher-level medical personnel capable of treating the condition, psychiatrist Jawaun Lewis, M.D., for a mental health evaluation. *See* Doc. 1, ¶¶ 28-29, 31, 33.

8.  Plaintiff alleges, during this assessment by a licensed professional counselor, Ms. Hanchett refused to inform LPC Myles-Henderson of any medications prescribed to her, including any psychotropic medications. *See* Doc. 1, ¶¶ 28-29, 31, 33.

9.  Plaintiff alleges, between November 30 and December 3, 2022 Ms. Henderson was not evaluated or treated by any provider but goes on to state Ms. Hanchett was observed by three different LPNs during this timeframe, including LPN Kariuki observing Ms. Hanchett on December 1. *See* Doc. 1, ¶¶ 35, 38, 40, 42.

10. According to the Complaint, on December 4, a Sunday, LPC Myles-Henderson assessed Ms. Hanchett a second time and confirmed her previous treatment plan of continuing Ms. Hanchett on suicide watch with referrals to security and medical

personnel capable of treating the condition, psychiatrist Jawaun Lewis, M.D. for a mental health evaluation, and also noted Ms. Hanchett "refused to interact with staff and this provider" and was "not responding verbally" thereby continuing to impede the medical and mental health treatment provided to her. *See* Doc. 1, ¶¶ 43-48.

11. The Complaint provides, on that same Sunday, December 4, Ms. Hanchett was also observed by Tara Doto, LPN. *See* Doc. 1, ¶ 50.

12. According to the allegations in Plaintiff's Complaint, LPC Myles-Henderson assessed Ms. Hanchett for a third time on December 5, when it was noted Ms. Hanchett continued to be on suicide watch and continued refused to respond. *See* Doc. 1, ¶¶ 51-52.

13. According to the Complaint, on December 5, Ms. Hanchett was observed by LPN Doto who noted Ms. Hanchett was eating an apple and later evaluated, again by LPN Doto, who attempted to take Ms. Hanchett's vital signs but was unable to do so due to Ms. Hanchett's refusal to receive medical treatment. *See* Doc. 1, ¶¶ 54; 57-59.

14. The Complaint provides, on December 6, Ms. Hanchett was observed by Jewel Johnson, LPN, who also noted Ms. Hanchett continued to refuse to respond to provider inquiries. *See* Doc. 1, ¶ 61.

15. According to the allegations contained in the Complaint, based on the referral made by LPC Myles-Henderson, on December 6, Ms. Hanchett was evaluated by higher-level medical personnel capable of treating the condition, non-defendant psychiatrist Jawaun Lewis, M.D., who performed a mental health evaluation. *See* Doc. 1, ¶¶ 63-64.

16. Plaintiff alleges, after completing the mental health evaluation, non-defendant Dr. Lewis made the determination and did not order Ms. Hanchett to be transferred to an outside facility to obtain a higher level of care. *See* Doc. 1, ¶¶ 63-64.

17. Based on the allegations contained in the Complaint, during this evaluation, Ms. Hanchett refused to inform Dr. Lewis of any medications prescribed to her, including any psychotropic medications. *See* Doc. 1, ¶¶ 63-64.

18. The Complaint provides, on December 6, LPN Hay again observed Ms. Hanchett and also noted she continued to refuse to respond to external stimuli. *See* Doc. 1, ¶ 65

19. According to the Complaint, on December 6, LPN Kariuki, again, attempted to complete Ms. Hanchett's medical intake screening, but was still unable to complete it due to Ms. Hanchett's continued refusal to receive medical attention or answer provider inquiries. *See* Doc. 1, ¶¶ 66; 69-70.

20. Plaintiff alleges LPN Kariuki rescheduled to attempt to complete Ms. Hanchett's medical intake screening at another time and placed her back on suicide watch. *See* Doc. 1, ¶¶ 69-70; 72.

21. The Complaint provides, on December 7, LPN Kariuki, again, evaluated Ms. Hanchett, took her vitals, and noted she continued to refuse to answer provider questions. *See* Doc. 1, ¶¶ 73-76.

22. Plaintiff alleges, following this evaluation, LPN Kariuki contacted higher-level provider, non-defendant Nurse Practitioner Becky Pata who provided orders to "give Gatorade BID x 5 days" and monitor Ms. Hanchett drinking water. *See* Doc. 1, ¶ 76.

23. Based on the Complaint, this same day, Ms. Hanchett was cleared to move to medical housing and was assessed by LPC Myles-Henderson for a fourth time, who noted Ms. Hanchett had not reported any medication(s) prescribed to her, including any psychotropic medication. *See* Doc. 1, ¶¶ 77; 79-81.

24. According to the allegations contained in the Complaint, by December 7, Ms. Hanchett had been assessed and/or observed, on at least seventeen (17) separate occasions, by at least seven (7) different providers but had only informed any provider she suffered from lupus and bipolar disorder but failed to report to any provider, at any time, of any medication(s) prescribed to her, including any psychotropic medication. *See* Doc. 1, ¶¶ 20-23; 28-29; 31; 38; 40; 42-46; 48; 50-52; 54; 57-59; 61; 63; 65-70; 73-75; 77; 79-81.

25. Plaintiff alleges, on December 8, Ms. Hanchett was observed unresponsive by LPN Doto who called 911 and attempted CPR, but Ms. Hanchett ultimately passed away. *See* Doc. 1, ¶¶ 85-86.

26. Plaintiff contends Ms. Hanchett died of heart failure with other significant conditions contributing to her death being psychosis with auditory and visual hallucinations and severe dehydration. *See* Doc. 1, ¶ 87.

27. Plaintiff does not allege LPN Kariuki failed to provide care to Ms. Hanchett, rather to the contrary Plaintiff acknowledges, Ms. Hanchett was observed and/or evaluated by LPN Kariuki three (3) times separate during her 10-day stay at CCJC. *See* Doc. 1, ¶¶ 38; 66; 69-70; 73-76.

28. Plaintiff's allegations, which must be taken as true, show Ms. Hanchett was receiving a consistent course of medical care and treatment during her stay at CCJC. *Id.*

29. Plaintiff's allegations, which must be taken as true, show Ms. Hanchett was receiving medical care and treatment directly related to the specific harm alleged by Plaintiff to be significant condition(s) contributing to Ms. Hanchett's death. *Id.*

30. While Plaintiff alleges the care and treatment provided to Ms. Hanchett was inadequate, Plaintiff has not alleged any specific acts and/or omissions of Defendant LPN Kariuki which constitute an alleged act of deliberate indifference.

31. Plaintiff's only claim against Defendant LPN Kariuki is for deliberate indifference, not any other theory of liability. *See* Doc. 1 ¶¶ 254-257; 259.

32. Plaintiff has alleged Defendant LPN Kariuki provided medical and health care services and medication to Ms. Hanchett while he was in the custody of the CCJC, by and through Turn Key's contract with Cleveland County to provide medical care to inmates. *See* Doc. 1 ¶¶ 3; 6.

## ARGUMENT & AUTHORITIES

### PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiff fails to state a claim upon which relief may be granted. In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (citations omitted). Further, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. For a complaint to have facial plausibility, the plaintiff

must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1940 (2009). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). A plaintiff's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

1. **Plaintiff has failed to allege facts sufficient to show LPN Kariuki was deliberately indifferent to a substantial risk of serious harm to Ms. Hanchett.**

Plaintiff asserts claims specifically against Defendant Natasha Kariuki, LPN arising under 42 U.S.C. § 1983 (hereinafter "§ 1983") for the alleged violation of Shannon Hanchett's constitutional right to receive adequate health care in violation of the Eighth and Fourteenth Amendments of the United States Constitution. *See* Doc. 1, ¶¶ 254-257; 259. In order to state a cognizable claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" that offend "'evolving standards of decency' in violation of the Eighth Amendment" – not the result of mere negligence. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Farmer v. Brennan*, 511 U.S. 825, 826 (1994)(In order to "state a claim under § 1983, an individual must allege misconduct that is 'so egregious as to subject the aggrieved individual to a deprivation of constitutional dimensions.'")

"[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. Therefore, it is well established that negligence alone does not state a claim under § 1983 for deliberate indifference to medial needs and, according to the Tenth Circuit, "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Id.* As such, the Tenth Circuit has repeatedly held questions over a difference of opinion over the adequacy of medical treatment provided sound in negligence and do not give rise to a claim of deliberate indifference. *Duffield v. Jackson*, 545 F.3d 1234, 1239(10th Cir. 2008)(no deliberate indifference where inmate received "repeated examinations"); *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803 (10th Cir. 1999)(holding a "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation"); *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993)(failure to transfer prisoner to receive treatment from heart specialist not deliberate indifference); *Ledoux v. Davies*, 961 F.2d 1536, 1537(10th Cir. 1992)(noting that types of medication prescribed and referrals to specialists are generally matters of medical judgment, not deliberate indifference); *El'Amin v. Pearce*, 750 F.2d 829 (10th Cir. 1984)(denial of x-ray of lower back after physical altercation amounts to difference of opinion between the plaintiff and the medical staff over the proper treatment of his injuries and does not support claim of deliberate indifference); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)("negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment"); *Jones v.*

*McCracken*, 562 F.2d 22 (10th Cir. 1977)(differing opinions between providers as to diagnosis and treatment provided to inmate do not rise to level of deliberate indifference); *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976)(differences in opinions related to sick calls, examinations, diagnoses, and medication do not support claim of deliberate indifference); *Henderson v. Sec'y of Corr.*, 518 F.2d 694 (10th Cir. 1975); *Paniagua v. Moseley*, 451 F.2d 228 (10th Cir. 1971)(refusal to transfer inmate out for surgery recommended by outside physician does not amount to deliberate indifference). The Tenth Circuit has even specifically held "the prisoner's right is to medical care is not to the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." *Coppinger v. Townsend*, 398 F.2d 392, 392-393 (10th Cir. 1968).

These multiplicity of Tenth Circuit opinions are rooted in guidance from the Supreme Court, which has firmly held a difference in opinion as to a matter of medical judgment does not represent cruel and unusual punishment and **cannot** provide the basis for an Eighth Amendment claim. *Estelle*, 429 U.S. at 104-106 (A complaint that a correctional health care contractor has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment) (emphasis added). The Supreme Court explained support for this ruling is rooted in the idea that an accident, although it may produce added anguish, is not, on that basis alone, to be characterized as wanton infliction of unnecessary pain. *Id.* at 104-106. Thus, the threshold for setting forth allegations that an inmate has been subject to cruel and unusual punishment in any regard remains high and in order to prevail on a § 1983 claim,

a plaintiff "must show deliberate indifference to a substantial risk of serious harm." *Estelle*, 429 U.S. at 105-06; *Farmer*, 511 U.S. at 837.

Deliberate indifference requires analysis of two components (1) the objective component, which requires a showing that the deprivation was sufficiently serious and (2) the subjective component, which is akin to "recklessness" as used in criminal law, and requires a showing of the conscious disregard of the substantial risk of serious harm. *Estelle*, 429 U.S. at 105-06; *Farmer*, 511 U.S. at 837. Therefore, the plaintiff must establish the defendant "acted with a culpable state of mind," as a defendant cannot be liable for a claim of deliberate indifference unless it is shown the defendant knew of and disregarded an excessive risk to inmate health and safety. *Id.* Defendant must specifically be shown to have been, both, aware of facts from which the inference could be drawn that a substantial risk of serious harm existed as to the individual, and it must be shown that defendant drew that inference, therefore, consciously disregarding the individual's health and safety to the level of a sufficiently serious deprivation. *Id.*

The Tenth Circuit has explained that case law firmly establishes "the subjective component presents a high evidentiary hurdle to the plaintiffs" and "is not satisfied, absent an extraordinary degree of neglect." *Self v. Crum*, 439 F.3d 1227,1232 (10th Cir. 2006). And further clarified a claim is **only** actionable and "conscious disregard" may be inferred where the need for additional treatment or referral to a medical specialist is obvious and the provider responds to an obvious risk with treatment that is patently unreasonable or delays referral to a higher level of care. *Self*, 439 F.3d at 1232; *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). But where a medical professional provides a level of care consistent

with the symptoms presented by the inmate an inference of deliberate indifference is unwarranted, and the requisite state of mind cannot be met. *Id*. Importantly, this subjective inquiry is limited to consideration of the medical provider's actual knowledge of the symptoms displayed at the time care was provided, not the ultimate treatment necessary. *Mata*, 427 F.3d at 753. Therefore, the question to determine whether the subjective component has been met is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Id.*

Here, the alleged deprivation sustained by Ms. Hanchett was death due heart failure with other significant conditions contributing to her death being psychosis with auditory and visual hallucinations and severe dehydration. *See* Doc. 1, ¶ 87. There is no dispute that death is sufficiently serious to satisfy the objective component. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). However, as outlined above, to satisfy the subjective component, Plaintiff must show Defendant had knowledge of the specific risk faced by Ms. Hanchett – i.e. the risk of imminent death facing Ms. Hanchett from heart failure – and knowingly and willingly disregarded that risk to the level of sufficiently serious deprivation. *Estelle*, 429 U.S. at 105-06 (1976); *Farmer*, 511 U.S. at 837.

The Oklahoma Nursing Practice Act sets forth LPNs are licensed to "contribut[e] to the assessment of the health status of individuals and groups;" "participat[e] in the development and modification of the plan of care;" and 'participat[e] in the evaluation of responses to interventions," among other things. Okla. Stat. Ann. tit. 59, § 567.3a(4). According to Plaintiff's own allegations, during Ms. Hanchett's 10-day stay at CCJC, she was observed, evaluated, and/or assessed, on at least seventeen (17) separate occasions, by

at least seven (7) different providers and was specifically observed and/or evaluated by LPN Kariuki three (3) times. *See* Doc. 1, ¶¶ 38; 66; 69-70; 73-76. More specifically, Plaintiff alleges, Ms. Hanchett, while refusing to cooperate to complete the medical intake screening, did inform intake personnel she suffered from bipolar disorder. *See* Doc. 1, ¶¶ 20-23. Plaintiff further alleges Ms. Hanchett died due to due heart failure with other significant conditions contributing to her death being psychosis with auditory and visual hallucinations and severe dehydration. *See* Doc. 1, ¶ 87. In order to satisfy the subjective component of deliberate indifference, the question must be asked: Has Plaintiff set forth facts sufficient to allege LPN Kariuki knew of the risk that Ms. Hanchett's self-provided diagnosis of bipolar disorder could cause or did cause psychosis with auditory and visual hallucinations that could have significantly contributed to her heart failing **and** LPN Kariuki chose to recklessly disregard it? *Mata*, 427 F.3d at 755. The answer to this is no and the requisite state of mind cannot be met because, based on the alleged symptoms Ms. Hanchett presented at the time, LPN Kariuki provided a level of care consistent with Ms. Hanchett's presentation, which included contacting a higher-level provider to obtain guidance and orders directly related to the specific harm alleged.

Specifically, Ms. Hanchett was allegedly observed and/or assessed by LPN Kariuki three (3) separate times during her 10-day stay at CCJC. *See* Doc. 1, ¶¶ 38; 66; 69-70; 73-76. LPN Kariuki first encountered Ms. Hanchett on December 1 and then again on December 6. *See* Doc. 1, ¶¶ 38, Between this time, Ms. Hanchett had been observed and/or assessed on at least ten (10) separate occasions, by at least seven (7) different providers, including a medical doctor. *See* Doc. 1, ¶ 42-46; 48; 50-52; 54; 57-59; 61; 63; 65. On

December 6, LPN Kariuki allegedly attempted to complete Ms. Hanchett's medical intake screening, which she initially refused to complete, but was still unable to do so based on Ms. Hanchett's continued refusal to receive medical attention or answer her questions. *See* Doc. 1, ¶ 66; 69-70. As a result, LPN Kariuki allegedly rescheduled to attempt to complete Ms. Hanchett's medical intake screening at another time and placed her back on suicide watch pursuant to prior orders provided by LPC Myles-Henderson. *See* Doc. 1, ¶ 69-70; 72. The next day, on December 7, LPN Kariuki, again, allegedly evaluated Ms. Hanchett, took her vitals, and noted she continued to refuse to answer any questions. *See* Doc. 1, ¶ 73-76. Following this evaluation, LPN Kariuki contacted a higher-level provider, a nurse practitioner, non-defendant Nurse Practitioner Becky Pata, who is licensed to diagnose and prescribe medications, treatments, and devices for acute and chronic conditions and diseases, to obtain orders directly related to treat dehydration. *See* Doc. 1, ¶ 76; Okla. Stat. Ann. tit. 59, § 567.3a(6); Okla. Admin. Code § 485:10-15-6(b). According to Plaintiff's allegations and with reasonable inferences therefrom, with the information provided by LPN Kariuki, NP Pata made the determination and provided orders, based on her training and education, to "give Gatorade BID x 5 days" and monitor Ms. Hanchett drinking water. *See* Doc. 1, ¶ 76.

Plaintiff's own allegations demonstrate LPN Kariuki did not consciously disregard Ms. Hanchett or respond to an obvious risk with treatment that is patently unreasonable. *Self*, 439 F.3d at 1232-33; *Mata*, 427 F.3d at 755. Rather, the exact opposite, in that, LPN Kariuki provided a level of care consistent with Ms. Hanchett's presentation and symptoms at the time of her observations/assessments which the Tenth Circuit has expressly stated

makes an inference of deliberate indifference unwarranted. *Id*. Similarly, such acts satisfied any "gatekeeper" responsibilities of LPN Kariuki, as she contacted a higher-level provider, and informed her of Ms. Hanchett's signs and symptoms to obtain orders related to Ms. Hanchett. *Mata*, 427 F.3d at 755.

Based on the allegations in the Complaint, even when taken in light most favorable to Plaintiff, Plaintiff has failed to properly plead LPN Kariuki knew of and disregarded a serious risk of harm facing Ms. Hanchett. Plaintiff does not allege Ms. Hanchett was denied care, or even that Ms. Hanchett medical condition was ignored by LPN Kariuki. Simply, Plaintiff disagrees with the care and treatment that was provided to Ms. Hanchett alleging such was inadequate and negligent. However, as outlined by the multitudinous authorities above, these claims are not actionable under § 1983 and; therefore, must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

**2. LPN Kariuki is immune from Plaintiff's state law tort claims under the Oklahoma Governmental Tort Claims Act and such are barred by the applicable statute of limitations.**

To the extent Paragraph Nos. 279-286 are intended to set forth a negligence claim against LPN Kariuki individually, such claim must also fail. Given the factual allegations pled in Plaintiff's Complaint, under Oklahoma's Governmental Tort Claims Act ("GTCA"), Turn Key is considered an "employee" of the state and immune from liability for tort claims. Section 152.1 of Title 51 of the Oklahoma Statutes provides:

> The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether

> performing governmental or proprietary functions, shall be immune
> from liability for torts.

Okla. Stat. Ann. tit. 51, § 152.1(A). The GTCA goes on to state, "licensed medical professionals under contract with the city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies' – such as LPN Kariuki – are considered "employees of the state" for purposes of the GTCA. Okla. Stat. Ann. tit. 51, § 152(b)(7). The Oklahoma Supreme Court has explicitly extended such immunity to a jail's health care contractor such as Turn Key and their employees. *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 2018 OK 90, ¶ 5, 432 P.3d 233. Many courts facing this same question has arrived at the correct conclusion that correctional health care contractors such as Turn Key, Correctional Healthcare Companies ("CHC"), Armor, and their employees are classified as an "employee" under the GTCA and, therefore, protected by its provisions. *Thompson v. Norman Reg'l Hosp.*, CIV-19-113-SLP (W.D. Okla. Mar. 11, 2020); *Espinosa Hernandez v. Armor Corr. Health Serv's., Inc.*, 2019 WL 3069430, *8 (W.D. Okla. Mar. 11, 2020) (dismissing Plaintiff's state law claims of negligence based on Armor's immunity under the GTCA); *Thompson v. Turn Key Health Clinics, LLC*, 5:19-CV-00113-SLP, (W.D. Okla. March 11, 2020) (Dismissing Plaintiff's negligence claims against Turn Key based upon the immunity under to GTCA, as provided for in *Barrios*)(emphasis added); *Holland v. Glanz*, No. 16-CV-349-JED-JFJ, 2019 WL 4781869, at *7 (N.D. Okla. Sept. 30, 2019); *Birdwell v. Glanz*, Case No. 15-CV-304-TCK-FHM (N.D. Okla. Mar. 12, 2019) (citing Okla. Stat. tit. 51, §§ 152(14) and 155(25)); *Strain v. Armor Corr. Health Care Serv's., Inc.*, No. 19-CV-527-JED-FHM, 2020 WL 5026548

(N.D. Okla. Aug. 25, 2020)(Dismissing defendant's state law negligence claims on grounds that Armor is immune from liability under the GTCA); *Crocker v. Armor Corr. Health Serv's, Inc.*, No. 17- CV-149-TCK-FHM, 2019 WL 2146595, *4 (N.D. Okla. May 16, 2019)("Pursuant to . . .*Barrios*, the Court concludes that the Oklahoma GTCA immunity provisions apply to Armor and its employees, who are therefore exempt from tort liability for Plaintiffs' negligence claim . . ."); *Bradshaw v. Armor Corr. Health Serv's., Inc.*, No. 17-CV-615-TCK-FHM, 2019 WL 1675148, *7 (N.D. Okla. April 17, 2019) (finding the GTCA's immunity provisions apply to Armor and its employees for state law tort claims); *Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-282-CVE-JFJ, 2019 WL 238153, *9 (N.D. Okla. Jan 16, 2019) (dismissing Plaintiff's state law claims of negligence based on Armor and Turn Key's immunity under the GTCA); *Burke v. Regalado*, 2019 WL 1371144, *2 (N.D. Okla. Mar. 26, 2019) (dismissing Plaintiff's state law claims of negligence based on Armor's employees' immunity pursuant to Barrios and the GTCA). Most importantly, Oklahoma Supreme Court's ruling has been straightforwardly and unequivocally affirmed by the Oklahoma Court of Civil Appeals ("COCA"), which likewise acts to reaffirm the voluminous aforementioned opinions as correct interpretations of the law and precedent that must be followed. *Nayebyazdi v. Turn Key*, Case No. 119,652, p. 8-9 (OK CIV APP Oct. 14, 2021).

To reiterate, according to the GTCA immunity provisions, state actors are exempt as a matter of law from liability for tort claims, such as those arising out of "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." Okla. Stat. tit. 51, § 155(25). Pursuant to the Section 155(25) exemption, LPN Kariuki cannot be held

16

liable for any tort claim that arise out of its regular duties of providing medical services to inmates at CCJC, including Ms. Hanchett. Therefore, to the extent Plaintiff has set forth a negligence claim against LPN Kariuki, such claims must be dismissed at this time pursuant to Federal Rule of Civil Procedure 12(b)(6) as LPN Kariuki is entitled to tort immunity under the GTCA – in accordance with the opinion of the Oklahoma Supreme Court subsequently affirmed by COCA. *See Barrios*, 432 P.3d 233 at ¶ 18; *Nayebyazdi*, Case No. 119,652 at p. 8-9. To the extent this Court declines to extend immunity as to Plaintiff's state law claim of negligence or wrongful death, this claim must still be dismissed as it is barred by the applicable statute of limitations. Okla. Stat. Ann. tit. 12, § 95(A)(11).

## CONCLUSION

Plaintiff's Complaint is properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiff has failed to allege facts sufficient to support a claim of deliberate indifference as to Defendant LPN Kariuki. Further, to the extent such a claim is being made, Defendant LPN Kariuki is immune from any state law claim of negligence/wrongful death pursuant to the GTCA and such claims are barred by the applicable statute of limitations. Therefore, dismissal of Plaintiff's claims against Defendant LPN Kariuki is appropriate at this time.

WHEREFORE, Defendant LPN Kariuki prays this Court grant this Motion and dismiss this action in its entirety.

Respectfully submitted,


*s/ Meilani C. Kaaihue*

Sean P. Snider, OBA #22307
Anthony C. Winter, OBA #32148
Meilani C. Kaaihue, OBA #33931
JOHNSON HANAN VOSLER
HAWTHORNE & SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: 405.232.6100
Facsimile: 405.232.6105
ssnider@johnsonhanan.com
awinter@johnsonhanan.com
mkaaihue@johnsonhanan.com
*Attorneys for Defendant Natasha Kariuki, LPN*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the <u>21st</u> day of February, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

<u>*/s/ Meilani C. Kaaihue*</u>
Meilani C. Kaaihue