## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL HANCHETT, as Personal Representative of the Estate of Shannon Hanchett, Deceased,<br><br>       Plaintiff,<br><br>v.<br><br>SHERIFF OF CLEVELAND COUNTY IN HIS OFFICIAL CAPACITY; TURN KEY HEALTH CLINICS, LLC, DIANA MYLES-HENDERSON, LPC, TARA DOTO, LPN, NATASHA KARIUKI, LPN,<br><br>      Defendants. | Case No. CV-24-87-SLP |

---

## MOTION TO DISMISS BY DEFENDANT
## SHERIFF OF CLEVELAND COUNTY, IN HIS OFFICIAL CAPACITY

---

Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
Sheila G. Jessee, OBA No. 33071
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
sjessee@piercecouch.com

February 26, 2023

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ **i**

**TABLE OF AUTHORITIES** ........................................................................................ **ii**

**INTRODUCTION** ........................................................................................................ **1**

**ARGUMENTS AND AUTHORITIES** ........................................................................ **4**

**I.  THE COURT SHOULD DISMISS THE OFFICIAL CAPACITY CLAIMS BECAUSE PLAINTIFFS FAILED TO PLEAD SUFFICIENT FACTS** ........ **4**

   **A.  RETAINING TURN KEY WAS CONSTITUTIONAL** .......................... **6**

   **B.  PLAINTIFF HAS FAILED TO PLEAD FACTS SHOWING ANY ALLEGED FAILURE OF THE SHERIFF TO TRAIN OR SUPERVISE DETENTION OFFICERS OR TURN KEY STAFF** .... **14**

   **C.  LACK OF CAUSATION AND FAILURE TO SHOW DELIBERATE INDIFFERENCE** .............................................................. **18**

   **D.  THE SHERIFF DID NOT FAIL TO SUPERVISE WITH RESPECT TO TURN KEY PERSONNEL** ............................................. **20**

**II.  PLAINTIFF HAS FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT THE CLAIM THAT TURN KEY'S POLICIES ARE UNCONSTITUTIONAL** ..................................................................................... **22**

**III.  PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO DEMONSTRATE AN UNDERLYING CONSTITUTIONAL VIOLATION BY ANY COUNTY OR TURN KEY EMPLOYEE.** ................. **23**

**CONCLUSION** ........................................................................................................... **26**

**CERTIFICATE OF SERVICE** .................................................................................. **27**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arnold v. City of Olathe, Kansas*,

    35 F.4th 778 (10th Cir. 2022) .......................................................................................... 13

*Baker v. Wilkinson*,

    2014 WL 298140 (E.D. Okla. Jan. 28, 2014) ................................................................... 10

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,

    520 U.S. 397 (1997) ................................................................................................... 5, 13

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544 (2007) .......................................................................................................... 5

*Bloom v. Toliver*,

    2015 WL 5577321 (N.D. Okla. Sept. 22, 2015) ............................................................. 19

*Butler v. City of Norman*,

    992 F.2d 1053 (10th Cir. 1993) ....................................................................................... 20

*City of Canton, Ohio v. Harris*,

    489 U.S. 378 (1989) .......................................................................................... 12, 15, 20

*City of Oklahoma City v. Tuttle*,

    471 U.S. 808 (1985) .......................................................................................... 12, 16, 17

*Connick v. Thompson*,

    563 U.S. 51 (2011) .................................................................................................... 15, 20

*Cory v. Allstate Ins.*,

    583 F.3d 1240 (10th Cir. 2009) ......................................................................................... 5

*Crocker v. Glanz*,

    752 Fed. Appx. 564 (10th Cir. 2018) .............................................................................. 18

*Ernst v. Creek County Public Facilities Authority*,

    697 Fed. Appx. 931 (10th Cir. 2017) ................................................................................ 9

*Escobar v. Mora*,

    496 Fed. App'x. 806 (10th Cir. 2012) ............................................................................... 5

*Estate of Beauford v. Mesa Cnty., Colorado*,

    35 F.4th 1248 (10th Cir. 2022) ........................................................................................21

*Estelle v. Gamble*,

    429 U.S. 97 (1976) ...............................................................................................23, 24

*Fisher v. Harden*,

    398 F.3d 837 (6th Cir. 2005) ...........................................................................................16

*Garcia v. Salt Lake County*,

    768 F.2d 303 (10th Cir. 1985) .........................................................................................24

*Goss v. Bd. of Cnty. Comm'rs of Creek Cnty*.,

    2014 WL 4983856 (N.D. Okla. Oct. 6, 2014) ................................................................17

*Green v. Branson*,

    108 F.3d 1296 (10th Cir. 1997) .......................................................................................24

*Gregg v. Georgia*,

    428 U.S. 153 (1976) .........................................................................................................24

*Griego v. City of Albuquerque*,

    100 F. Supp. 3d 1192 (D.N.M. 2015) .............................................................................14

*Hall v. Bellmon*,

    935 F.2d 1106 (10th Cir. 1991) .......................................................................................12

*Heidtke v. Corr. Corp. of Am.*,

    489 Fed. Appx. 275 (10th Cir. 2012) .......................................................................24, 25

*Hinton v. City of Elwood, Kan.*,

    997 F.2d 774 (10th Cir. 1993) ...........................................................................................5

*Lucas v. Turn Key Health Clinics, LLC*,

    58 F.4th 1127 (10th Cir. 2023) ...........................................................................10, 11, 13

*Mann v. Yarnell*,

    497 F.3d 822 (8th Cir. 2007) ...........................................................................................16

*Martin v. Creek County Jail*,

    2010 WL 4683852 (N.D. Okla. 2010) .............................................................................24

*Martinez v. Beggs*,

    563 F.3d 1082 (10th Cir. 2009) ................................................................................. 18, 24

*McGaw v. Sevier Cnty., Tennessee*,

    715 Fed. Appx. 495 (6th Cir. 2017) ................................................................................. 21

*McGee v. Adams*,

    721 F.3d 474 (7th Cir. 2013) ........................................................................................... 21

*McLain v. Sheriff of Mayes Cty.*,

    595 F. App'x. 748 (10th Cir. 2014) ................................................................................. 16

*McRaven v. Sanders*,

    577 F.3d 974 (8th Cir. 2009) ........................................................................................... 21

*Meadows v. Whetsel*,

    2015 WL 7016496 ............................................................................................................. 17

*Minix v. Canarecci*,

    597 F.3d 824 (7th Cir. 2010) ........................................................................................... 10

*Monell v. Dept. of Social Services of New York*,

    436 U.S. 658 (1978) ...................................................................................................... 6, 23

*Murphy v. City of Tulsa*,

    950 F.3d 641 (10th Cir. 2019) ......................................................................................... 5, 6

*Myers v. Okla. County Bd. of County Comm'rs*,

    151 F.3d 1313 (10th Cir. 1998) ....................................................................................... 23

*Pembaur v. City of Cincinnati*,

    475 U.S. 469 (1986) ........................................................................................................... 6

*Peterson v. City of Fort Worth, Tex.*,

    588 F.3d 838 (5th Cir. 2009) ........................................................................................... 17

*Plinton v. County of Summit*,

    540 P.3d 459 (6th Cir. 2008) ........................................................................................... 16

*Reece v. Hale*,

    58 F.4th 1027 (8th Cir. 2023) ........................................................................................... 21

*Schneider v. City of Grand Junction Police Dept.*,

    717 F.3d 760 (10th Cir. 2013) .......................................................................................... 5

*Scott v. Vance*,

    2023 WL 198652 (E.D. Ark. Jan. 17, 2023) ................................................................. 10

*Seamons v. Snow*,

    206 F.3d 1021 (10th Cir. 2000) ....................................................................................... 23

*Self v. Crum*,

    439 F.3d 1227 (10th Cir. 2006) ................................................................................. 24, 25

*Sherman v. Klenke*,

    653 F. App'x 580 (10th Cir. 2016) ................................................................................. 11

*Spruill v. Gillis*,

    372 F.3d 218 (3d Cir. 2004) ............................................................................................ 21

*Strain v. Regalado*,

    977 F.3d 984 (10th Cir. 2020) ......................................................................................... 22

*Sweat v. Butler*,

    90 F. Supp. 3d 773 (W.D. Tenn. 2015) ........................................................................... 20

*Szabla v. City of Brooklyn Park, Minnesota*,

    486 F.3d 385 (8th Cir. 2007) ........................................................................................... 12

*Waller v. City & Cnty. of Denver*,

    932 F.3d 1277 (10th Cir. 2019) .................................................................................... 8, 15

*White v. City of Albuquerque*,

    2014 WL 12639935 (D.N.M. Sept. 29, 2014) ................................................................. 17

*Whitehead v. Marcantel*,

    766 Fed. Appx. 691 (10th Cir. 2019) .............................................................................. 22

*Williams v. City of Tulsa, OK*,

    393 F.Supp.2d 1124 (N.D.Okla.2005) ............................................................................ 23

## Rules

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 25

## MOTION TO DISMISS OF DEFENDANT SHERIFF OF CLEVELAND COUNTY, IN HIS OFFICIAL CAPACITY, AND BRIEF IN SUPPORT

Defendant Sheriff of Cleveland County, in his official capacity ("Sheriff"), respectfully submits this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiff has failed to state a claim upon which relief may be granted. In support thereof, Defendant offers the below Brief:

### INTRODUCTION

Plaintiff has filed this § 1983 lawsuit arising out of the detention of Ms. Shannon Hanchett at the F. DeWayne Beggs Detention Center ("Cleveland County Detention Center" or "CCDC"). Plaintiff alleges that the Sheriff, via Turn Key Health Clinics, LLC ("Turn Key"), the contracted medical provider at the CCDC, denied Ms. Hanchett adequate medical care during her detention from November 26, 2022 to December 8, 2022. *See generally* Doc. 1, Complaint.

The Complaint generally claims that Ms. Hanchett was suffering from a mental health episode prior to her detention, and that she continued to experience this episode until she was, unfortunately, found deceased in her cell. Plaintiff asserts that CCDC and Turn Key staff were deliberately indifferent to Ms. Hanchett's medical and/or mental health needs. As to the Sheriff and Turn Key, Plaintiff asserts both maintained an unconstitutional policy/custom of an "inadequate medical care delivery system."

In asserting municipal liability claims against the Sheriff, Plaintiff avers the Sheriff was deliberately indifferent by retaining Turn Key as the medical provider at the CCDC. Specifically, Plaintiff claims the Sheriff knew Turn Key would provide deficient services

1

to Ms. Hanchett by pointing to disparate allegations of denial of medical care by Turn Key arising out of its services at facilities *other than* CCDC. As detailed below, these other alleged instances of denial of medical care by Turn Key are dissimilar, attenuated in time, and again, mostly occurring at facilities other than CCDC.

The Complaint further fails as it is comprised of conclusory, and often contradictory, allegations. For example, Plaintiff alleges, "Jail staff routinely missed the required 15-minute checks of Ms. Hanchett." (Doc 1, ¶ 36). Then, Plaintiff confusingly claims that Jail staff *did* conduct checks, and unnamed/unidentified individuals observed Ms. Hanchett's behavior but failed to report it to medical staff. (Doc 1, ¶ 37). Despite alleging a failure to report to medical staff, Plaintiff then alleges that Turn Key Nurse Kariuki was charting and was observing Ms. Hanchett's status. (Doc. 1, ¶ 38). The Complaint repeatedly alleges supposed sight check failures, but remains bizarrely silent as to how such failures caused or contributed to Ms. Hanchett's injuries.

As another example of the contradictions, Plaintiff asserts, "[T]here is no indication in the medical records that any Turn Key employee/agent assessed, evaluated, or treated Ms. Hanchett from the time she was booked until the evening of November 30." (Doc 1, ¶ 26). Yet, immediately prior to that allegation, Plaintiff stated Turn Key Nurse Hay took Ms. Hanchett's vital signs in the early hours of November 27, and noted Ms. Hanchett had lupus and bipolar disorder. (Doc 1, ¶¶ 21 – 23).

The Complaint also makes unfounded assertions that certain staff members were incapable of caring for inmates because of his or her licensure status. The Complaint takes issue with Nurse Hay, a Licensed Practical Nurse, performing the initial medical screening

of Ms. Hanchett. Plaintiff impugns the abilities of LPNs by criticizing the length of their education that "often culminat[es] in a certificate." *See* Doc. 1, p. 5, Fn. 1. Notwithstanding, Nurse Hay did everything that Plaintiff believes LPNs are allowed and/or capable of doing, which is "record a patient's health history…measure and record vital signs…." *Id*. It is alleged that Dianna Myles-Henderson, a Licensed Professional Counselor, saw Ms. Hanchett to assess her well-being. Again, Plaintiff impugns the abilities of LPCs by claiming LPCs are "not authorized or qualified" to provide medical or psychiatric evaluation, treatment, or assessment. *See* Doc. 1, p. 7, Fn. 2. Plaintiff offers no basis for this conclusory opinion, other than to say it is so.

And, despite Plaintiff repeating *ad nauseaum* that Ms. Hanchett was experiencing a supposed "serious and complex psychotic episode," and that CCDC staff were incapable of caring for those experiencing such mental health episodes (*see e.g.* Doc. 1, ¶¶ 30, 49), Plaintiff alleges that Ms. Hanchett ultimately succumbed to heart failure. (Doc. 1, ¶ 87).

Based on the foregoing, Plaintiff has asserted a claim of municipal liability against the Sheriff of Cleveland County, as the final policymaker of the Cleveland County Detention Center. (Doc. 1, ¶¶ 272 – 278). However, Plaintiff has failed to sufficiently allege factual allegations to support such a claim. As stated above, Plaintiff's vague theory of liability is premised on the generalized argument that the Sheriff's mere retention of Turn Key was unconstitutional. (Doc. 1, ¶ 240: "Indeed, by simply retaining Turn Key…the County [is] deliberately indifferent…."). What Plaintiff has failed to sufficiently plead is the key question: How? Instead of alleging there was some pattern of similar failures with Turn Key at CCDC *and* of which the Sheriff was on notice, Plaintiff attempts to pull the

3

wool over the Court's eyes by referencing disparate allegations of denial of medical care by Turn Key staff at facilities *other than* CCDC.

Also noted above, Plaintiff claims the Sheriff provided inadequate training with respect to 15-minute checks of inmates requiring close monitoring. (Doc. 1, ¶¶ 242 – 247, 258). Likewise, Plaintiff has not shown a pattern of failures, or even minimally identified in what respect there was a failure to train. Plaintiff also summarily makes an argument there was a failure to sufficiently staff CCDC (Doc. 1, ¶ 251), but fails to explain how staffing levels (or the purported sight check failure) are connected to the claims in this lawsuit.

As demonstrated herein, Plaintiff's claims are merely conclusory, unfounded, and his statements fail to establish a plausible claim for municipal liability under federal pleading standards. The hodgepodge of allegations are attempt to bury the Court in a sheer number of allegations, hoping to lead the Court to believe Plaintiff has sufficiently pled his claims. As this Court is well aware, a claim for municipal liability requires more than a numerosity of allegations. As a matter of law and for the reasons stated herein, Plaintiff's municipal liability claims against the Sheriff of Cleveland County, in his official capacity, fail as a matter of law and should be dismissed.

## ARGUMENTS AND AUTHORITIES

## I. THE COURT SHOULD DISMISS THE OFFICIAL CAPACITY CLAIMS BECAUSE PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTS.

Plaintiff seeks to hold Defendant Sheriff liable based on: (1) "maintaining an unconstitutional health care delivery system" by retaining Turn Key as the jail's medical

provider; and, (2) a purported failure to train and staff. However, as stated above, Plaintiff's municipal liability claims are wholly conclusory, merely relying on buzzwords without sufficiently alleging a basis for a valid claim of municipal liability. Plaintiff fails to explain how the Sheriff's purported policies or customs were the "moving force" behind the alleged deprivation of Ms. Hanchett's constitutional rights.

A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id*. If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 Fed. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)).

To establish liability against a local government entity under §1983, plaintiffs must show: (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993); *Murphy v. City of Tulsa*, 950 F.3d 641 (10th Cir. 2019). When a claim of municipal liability is asserted, "**rigorous standards of culpability and causation must be applied** to ensure that the municipality is not held liable solely for the actions of its employee." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997)).

5

The requirement that a plaintiff demonstrate the existence of a custom or policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). It is well established that a government body is not liable under §1983 for the acts of an employee on a *respondeat superior* theory. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 691 (1978). It is for this reason that a plaintiff must demonstrate that the entity's "policy or custom" caused the constitutional tort. *Pembaur*, 475 U.S. at 479-80.

A municipal policy or custom may manifest itself in several forms: (1) a formal regulation or policy; (2) a widespread, permanent, and well-settled custom; (3) a decision by an employee with final policymaking authority; (4) a final policymaker's ratification of both an employee's unconstitutional actions and the basis for them; or (5) the deliberately indifferent failure to appropriately hire, train, supervise, or discipline employees. *Murphy*, 950 F.3d at 644. Plaintiff's official capacity claims against the Sheriff rely on the first (retaining Turn Key as a medical provider) and fifth forms (failure to train).

### A. RETAINING TURN KEY WAS CONSTITUTIONAL.

Plaintiff alleges that the Sheriff maintained an unconstitutional policy of contracting with Turn Key as the medical provider for the jail. *See e.g*., Doc. 1, ¶ 240. Plaintiff baldly asserts that the Sheriff "[was] aware, or should [have been] aware" Turn Key would provide deficient medical care at Cleveland County Detention Center. *See* Doc. 1, p. 43, ¶ 241. The Complaint argues that the Sheriff "was or should have been" aware of Turn Key's

6

purported inability to provide adequate care by enumerating several *distinct* and *dissimilar* instances of alleged denials of medical care by Turn Key. *See* Doc. 1, ¶¶ 109 – 220.

Ambiguously, Plaintiff suggests the Sheriff should have known Turn Key would fail to provide adequate care to Ms. Hanchett in 2022 based upon these attenuated, unrelated incidents of alleged prior denials of medical care by Turn Key. Plaintiff's claims are conclusory, supported by nothing else other than Plaintiff's *ipse dixit*. These far-reaching allegations cover a wide-swath of medical care, nearly all of which occurred at facilities *other than* Cleveland County Detention Center.

For example:

- A *2016* incident at *Garfield County Jail* wherein an inmate died while restrained in a chair (*Id.*, ¶ 113);

- A *2016* incident at *Muskogee County Jail* wherein an inmate became paralyzed, possibly caused by a cancer (*Id.*, ¶ 116);

- Another *2016* incident at *Muskogee County Jail* wherein an inmate developed a cervical epidural abscess infection in his spine (*Id.*, ¶ 117);

- A *2019* incident at *Tulsa County Jail* wherein an inmate suffered complications related to a stroke (*Id.*, ¶¶ 122 - 140);

- A 2021 incident at *Sebastian County, Arkansas* jail wherein an inmate died from a combination of COVID-19, dehydration and malnutrition (*Id.*, ¶¶ 195 – 197).

In sum, Plaintiff enumerates 19 incidents allegedly involving Turn Key's denials of medical care. Only 7 occurred at the Cleveland County Detention Center. Even the alleged

incidents of denial of medical care at CCDC are distinct and dissimilar from that of Ms. Hanchett's detention. For example [1]:

- A *2014* incident at CCDC involving an inmate with a sinus infection that evolved into a *bacterial brain infection* (*Id.*, ¶¶ 109 - 112); Plaintiff does not allege that there was any finding of unconstitutional policy as to either Cleveland County or Turn Key in that case and, indeed, there was not;

- A *2018* incident at CCDC involving Marconia Kessee and a completely different set of circumstances related to a *drug overdose* (*See Thompson v. Norman Regional Hospital Authority, et al.*, CIV-19-113). There was no finding in *Thompson* of any unconstitutional policy by Cleveland County and no such finding has been made as to Turn Key (*Id.*, ¶ 121);

- A *2019* incident at CCDC involving pro se plaintiff Bryan Davenport, who alleged he did not receive treatment of his *HIV* (*See Davenport v. Pata, et al.*, CIV-20-358) (*Id.*, ¶¶ 141). Similarly, there were no findings of unconstitutional policy as to either Cleveland County or Turn Key in that case. Moreover, the records indicated Plaintiff had received extensive medical treatment from both CCDC/Turn Key, as well as outside providers at OU Health;

- An unnamed inmate that died from congestive heart failure in October-November 2020. Plaintiff offers no details, and opportunistically, asserts it was due to the same failures asserted by him in this lawsuit, being, a failure to assess, evaluate, and treat and failure to refer to an outside provider. (*Id.*, ¶ 142);

- A 2021 incident at CCDC involving inmate Joseph Stewart. Mr. Stewart died outside of the custody of CCDC from endocarditis, respiratory failure, congestive heart failure, and hyponatremia (*Id.*, ¶¶ 157 – 183).

---

[1] Plaintiff cites to additional alleged incidents of denial of medical care occurring on December 20, 2022 and February 2023, both of which took place after Ms. Hanchett's detention, and involve distinct and dissimilar circumstances to the one at issue. (Doc. 1, ¶¶ 217 – 221).

These incidents should not be taken into consideration for purposes of Plaintiff's claims against the Sheriff. These purported denials of medical care *occurred subsequent to the one at issue*, and cannot be considered as having given the Sheriff notice of any deficiency for purposes of establishing municipal liability. *See e.g.*, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286-87 (10th Cir. 2019)

These "examples" beg the question: How do these allegations show that Sheriff *knew* Turn Key would provide deficient care to Ms. Hanchett at Cleveland County Detention Center in 2022? How do alleged denials of medical care related to a sinus infection, a drug overdose, or a suicide relate in any way to Ms. Hanchett's detention? Why is an allegation of denial of care to a COVID-19 positive inmate in an *Arkansas* jail referenced as a basis for this Plaintiff's claims against the Sheriff of Cleveland County? Plaintiff does not say. Moreover, there is no suggestion the same Turn Key staff alleged to have deprived inmates of medical care in these other incidents were the same ones employed by Turn Key at CCDC during Ms. Hanchett's detention in 2022.

Again, Plaintiff enumerates 19 incidents allegedly involving Turn Key's denials of medical care. Of these incidents, only 7 occurred at the CCDC. As noted, two occurred after Ms. Hanchett's detention. The remaining five, one of which was nearly a decade prior, are wholly dissimilar in facts, circumstances, and even medical condition. Plaintiff does not allege that a single one of these "examples" resulted in a finding, whether by judge or jury, that Turn Key had failed to provide adequate medical care or had violated the Constitutional rights of inmates. It is on the basis of these entirely disparate circumstances that Plaintiff rests her claim against the Sheriff. This is insufficient to demonstrate a claim under the pleading standards.

Plaintiff further adds to her red herrings by claiming there was some perverse cost-consideration that somehow caused Ms. Hanchett's injuries. First, Plaintiff asserts there were not enough "high-level" providers at CCDC to care for inmates. However, **there is no constitutional right to evaluation by** "**someone with more training**." *See e.g., Ernst*

*v. Creek County Public Facilities Authority*, 697 Fed. Appx. 931, 934 (10th Cir. 2017) (no right to have a licensed physician or psychiatrist who makes suicide watch determinations); *Minix v. Canarecci*, 597 F.3d 824, 832-33 (7th Cir. 2010); *Scott v. Vance*, 422CV00985KGBJJV, 2023 WL 198652, at * 1 (E.D. Ark. Jan. 17, 2023) ("But prisoners are not entitled to the medical care of their choosing, and a mere disagreement with the course of medical care does not rise to the level of a constitutional violation."); *Baker v. Wilkinson*, CIV-13-140-JHP-SPS, 2014 WL 298140, at * 5 (E.D. Okla. Jan. 28, 2014) ("[T]here is no constitutional right to be seen only by a licensed physician.").

Notwithstanding, Plaintiff also boldly alleges the contract between Cleveland County and Turn Key contains provisions that "create a dual financial incentive to under-prescribe and under-administer medications and to keep inmates, even inmates with serious medical needs, at the Jail and to avoid off-site medical costs." *See* Doc. 1, ¶ 97. First, Plaintiff fails to allege any facts to establish such a claim. Second, nowhere does Plaintiff tie this purported "cost-saving" policy/custom to care provided to Ms. Hanchett during her detention. Alternatively stated, Plaintiff does not allege any facts as to how Ms. Hanchett's alleged mistreatment was the result of some fictitious cost-saving measure. This allegation appears to be an ill-supported after-thought, rather than a factual basis for Plaintiff's claim against the Sheriff.

It bears noting these allegations are not new. The Tenth Circuit recently ruled the *exact same* allegations were insufficient to survive a motion to dismiss municipal liability claims asserted against the Sheriff of Tulsa County. Specifically, in *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127 (10th Cir. 2023), the Tenth Circuit noted:

> **Plaintiff claims that Turn Key and [Sheriff] Regalado enacted policies and customs designed to keep jail costs low and profit margins high**. This had the natural consequence of both keeping inmates, even those with serious medical needs, at the jail **to avoid off-site medical costs and to under-prescribe and under-administer medications**. According to Plaintiff, this custom or policy was evident in the contract between Turn Key and Tulsa County. **The contract allegedly creates such improper financial incentives** because it provides no mandatory minimum health expenditures, and it delineates financial responsibility for pharmaceuticals at the jail to Turn Key and the costs of inmate hospitalizations and offsite care to the county.

*Id*., at 1145 (emphasis added). Like in *Lucas*, Plaintiff's municipal liability claim fails because:

> **[T]he cost-cutting policy allegations lack specific facts**. We find this court's decision in Sherman v. Klenke persuasive. 653 F. App'x 580, 593 (10th Cir. 2016) (unpublished). There, this court found the plaintiff's allegation that a jail's medical contractor had a policy "to reduce overall expenses and maximize bonuses with each fiscal period" conclusory. Id. Similarly, there are simply no facts in Plaintiff's complaint from which one can infer a policy or custom of cost-cutting….**the contract does not reveal an improper financial incentive to keep costs low as it simply describes the cost sharing agreement between the county and Turn Key. To the extent it reveals a financial incentive, it is no more troublesome than any institution's general desire to maintain low costs to the extent reasonably possible.** Moreover, the complaint does not explain why the absence of a mandatory minimum expenditure in the contract is particularly problematic here and why it gives rise to an inference of a policy of cost-cutting.

*Id*. (emphasis added).

Moreover, Plaintiff's own allegations regarding prior incidents undercuts his purported "cost-saving" argument. For example, Plaintiff referenced a 2021 CCDC incident involving former inmate Joseph Stewart. *See* Doc. 1 pp. 29-33, ¶¶ 157 – 182. Mr. Stewart was not only prescribed medications on multiple occasions (*Id*., ¶¶ 164, 176, 178), but transported to Norman Regional Hospital on two separate occasions in the first 2 weeks

of his detention (*Id*., ¶¶ 166-67, 169). On one of these occasions, Mr. Stewart was "sen[t] to ER ***out of abundance of caution***." (*Id*., ¶ 166).

Furthermore, Plaintiff does not allege that the contract between Turn Key and the County itself is facially unconstitutional. Rather, Plaintiff vaguely *implies* that it is. Specifically (rather, ambiguously), Plaintiff states Turn Key is only contractually bound to cover a certain amount of medical care costs, but does not say that this is facially unconstitutional. And,

> Where a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a "policy" by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers.

*Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 390 (8th Cir. 2007) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)); see also *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[L]imitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter.").

Plaintiff has failed to show how the purported inadequacies were the *product* of the contract. Instead, Plaintiff's claim premised on the foregoing is purely conjecture. Plaintiff provides zero factual support, relying wholly on assumptions and conclusory statements. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff does <u>not</u> allege *how* an alleged "cost-cutting" measure led to Hanchett's injuries. Plaintiff does <u>not</u> allege that a *better* alternative to Turn Key was available to the Sheriff.

12

Plaintiff does not allege how an alternative provider would have made any difference in the outcome. And, as shown above, Plaintiff's purported examples of Turn Key's purported shortcomings are entirely dissimilar, nearly all of which occurred at facilities other than CCDC. Even those that *did* occur at CCDC, those either occurred years before Ms. Hanchett's incarceration, or, again, were under dissimilar circumstances. Despite this, Plaintiffs asserts that *as a result* of retaining Turn Key, Ms. Hanchett died.

In addition, the allegation that it was unconstitutional to continue to retain Turn Key is lacking in another fundamental aspect: lack of causal link. With respect to claims of municipal liability, a plaintiff must show a policy or practice was the "moving force" behind the alleged injury. "We must rigorously scrutinize the causation element when the municipal policy is not itself unconstitutional to ensure that the municipality is not held liable solely for its employees' actions." *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). Again, in *Lucas*, *supra*, the Tenth Circuit found a lack of allegations that would plausibly show the requisite causal link:

> **Even if we consider the policy of cost-cutting as sufficiently pled**, the complaint is devoid of any allegations which could lead one to plausibly infer these policies caused Ms. Caddell's injury. Here, **the complaint does not allege that** Dr. Myers or **any medical staff**, including Ms. Hadden, **were motivated by cost in their actions**. Instead, the complaint paints a picture that Dr. Myers acted inexplicably and on his own in the face of Ms. Caddell's concerning and worsening symptoms.

*Lucas*, 58 F.4th at 1145 (emphasis added). Likewise, Plaintiff has not pled any facts to show, much less even insinuate, any staff member at Turn Key or CCDC was motivated by cost.

Courts have emphasized that in pleading a basis for municipal liability, conclusory allegations of "policy or custom" will be rejected as insufficient. In *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192 (D.N.M. 2015), the court reviewed numerous cases establishing that a plaintiff asserting the existence of *Monell* liability must provide factual allegations giving rise to an inference that the policies causing the constitutional violation actually exist. The *Griego* court concluded that "[t]hese cases all stand for the same thing: at the pleading stage, **the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted**." (emphasis added).

Plaintiff has failed to demonstrate that retaining Turn Key was unconstitutional. Instead of adequately alleging any basis for the claim, Plaintiff would have this Court make assumptions for him based on the conclusory allegations, which is insufficient to survive a motion to dismiss. For these reasons, Plaintiff's claims against the Sheriff should be dismissed.

## B. PLAINTIFF HAS FAILED TO PLEAD FACTS SHOWING ANY ALLEGED FAILURE OF THE SHERIFF TO TRAIN DETENTION OFFICERS OR TURN KEY STAFF

Plaintiff also claims that the Sheriff failed to adequately train staff at Cleveland County Detention Center. Despite endeavoring to paint a grim picture, Plaintiff failed to plead facts showing the Sheriff failed to train either detention staff or Turn Key staff. First, while not explicit, Plaintiff presumably suggests there was some failure to train on 15-minute checks. *See e.g.*, Doc. 1, ¶¶ 34, 55. Second, Plaintiff also ambiguously claims there was some training failure regarding Turn Key employees with respect to "appropriate standards of care with respect to inmates with complex or serious medical and/or mental

14

health needs." *Id*., ¶¶ 99 – 101. Critically, Plaintiff offers no facts to show any purported failure to train in either respect. Instead, he merely concludes there were failures without more.

As the Supreme Court has warned, "**[a] municipality's culpability for a deprivation of rights is at its *most tenuous* where a claim turns on a failure to train**." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added). A claim based on a failure to train or supervise can only exist "only where the failure to train **amounts to deliberate indifference** to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (emphasis added). The same standard applies whether assessing municipal liability for claims of failure to train or supervise. *See e.g. Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019).

As the court is well-aware, Plaintiff must show that the Sheriff disregarded a known or obvious consequence of a failure to train *in the relevant respects*. To do so, **a plaintiff must identify "[a] pattern of similar constitutional violations** by untrained employees…' **Without notice** that a course of training is deficient in a particular respect, **decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights**.'" *Connick*, 563 U.S. at 62 (emphasis added).

There is a remarkable dearth of facts showing any widespread inadequacies or a pattern of failures at Cleveland County Detention Center with respect to 15-minute checks. While Plaintiff attempts to allege a pattern of failure, he only references missed checks during the month of Ms. Hanchett's detention and the following month. *See* Doc. 1, ¶ 243.

The Complaint also cites some missed checks in May 2022 (¶ 244), but offers nothing else. This hardly shows a *widespread* deficiency in training. Furthermore, the Complaint does not allege that any of the alleged missed checks resulted in a harm to anyone such that, notice of a training deficiency with the potential to cause injury could be imputed to the Sheriff.

With respect to Turn Key employees, Plaintiff similarly fails to offer facts as to widespread inadequacies or a pattern of failures at Cleveland County Detention Center. The preceding section establishes that Plaintiff has only cited to disparate allegations of denial of medical care by Turn Key staff. This shortcoming is further underscored by the limited, and incongruent, examples that occurred at CCDC. Neither sufficiently (or plausibly) shows that the Sheriff would have been on notice of any training shortcomings at CCDC, in the relevant respect.

"[P]laintiff must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. County of Summit*, 540 P.3d 459, 464 (6th Cir. 2008) quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Mann v. Yarnell*, 497 F.3d 822, 827-28 (8th Cir. 2007); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985). "To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*." *City of Canton*, 489 U.S. at 399-400.

Indeed, courts have frequently rejected efforts to impose municipal liability based on only on allegations of single or infrequent prior incidents. "A 'single isolated incident' does not prove the existence of an unconstitutional policy or custom." *McLain v. Sheriff of Mayes Cty.*, 595 F. App'x. 748, 753–754 (10th Cir. 2014) (citing *Tuttle*, 471 U.S. at 821). "Where prior incidents are used to prove a pattern, they **must have occurred for so long or so frequently** that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (cited favorably in *Meadows v. Whetsel*, 2015 WL 7016496, at \*6) (emphasis added). Said another way, "[t]o establish notice, Plaintiff was required to prove the existence of a pattern of tortious conduct and not simply an isolated instance." *White v. City of Albuquerque*, 2014 WL 12639935, at \*33 (D.N.M. Sept. 29, 2014).

Plaintiff's conclusory allegations of improper training fail all of the rigorous standards of proof discussed above. *How* did the Sheriff improperly train its staff? What were the specific deficiencies in the training program that were the direct cause of Ms. Hanchett's injuries? Was there a sufficiently similar incident to Ms. Hanchett's that would have put the Sheriff on notice there was deficient training at CCDC in the relevant respect? These fundamental, threshold questions remain. Plaintiff does not make the minimal effort to connect any of these requisite allegations to Ms. Hanchett's detention in 2022. There is such a dearth of allegations that even assumptions cannot even be made.

17

## C. LACK OF CAUSATION AND FAILURE TO SHOW DELIBERATE INDIFFERENCE

Plaintiff must also establish causation by identifying a deficiency in the training program that is "closely related to the ultimate injury," and then demonstrate that the deficiency in training caused the injury. *City of Canton*, 489 U.S. 378, 391; *Goss v. Bd. of Cnty. Comm'rs of Creek Cnty*., No. 13-CV-0374-CVE-TLW, 2014 WL 4983856, at *20 (N.D. Okla. Oct. 6, 2014) ("The Supreme Court and the Tenth Circuit require more than a simple statement of fault to prove causation.") (citing *City of Canton*, 489 U.S. at 391–92 ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.")).

Moreover, Plaintiff must allege the Sheriff exhibited deliberate indifference to the training deficiency. In other words, Plaintiff must allege the Sheriff knew of, and disregarded, a training shortcoming. However, Plaintiff cannot simply allege that the Sheriff was deliberately indifferent to any training deficiency, but deliberately indifferent to the "specific risk" claimed by Plaintiff. "For example, a jail may have a defective policy regarding admission of intoxicated persons; but it would not be liable with respect to a suicide by such a person unless it was shown that jail personnel 'were deliberately indifferent to the specific risk of suicide, and not merely to the risk of intoxication.'" *Crocker v. Glanz*, 752 Fed. Appx. 564, 569 (10th Cir. 2018) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009).

Plaintiff vaguely concludes there was a failure to train regarding checks and Turn Key employees' abilities, but never explains how that training failure *caused* Ms. Hanchett's injuries. Assuming arguendo that Plaintiff did sufficiently allege training inadequacies, *how was the training causally related* to the actions of the CCDC staff with respect to Ms. Hanchett?

As a further point, Plaintiff alleges that Ms. Hanchett died from heart failure. (Doc. 1, ¶ 87). Despite emphasizing Ms. Hanchett's mental health issues, Plaintiff has failed to allege facts showing a failure to train regarding the specific risk claimed: heart failure. Even if we were to expand the claimed risk as Plaintiff alleges (e.g, heart failure with psychosis, hallucinations, and dehydration, *See* Doc. 1, ¶ 87), his claims still fail. Specifically, Plaintiff does not provide anything other than conclusory allegations that there was a failure to train.

The Sheriff can only presume Plaintiff's claim is that this isolated incident, on its own, establishes municipal liability. Plaintiff devotes paragraphs describing other alleged denials of medical care perpetrated at facilities other than CCDC. Again, importantly, Plaintiff has failed to show there was a training deficiency at CCDC. Plaintiff has failed to show the causal link. None of the alleged other instances of failures are similar to Plaintiff's facts. Regardless of how Plaintiff attempts to compare his claims to these past instances, that absence of similarity dooms his claim. And because Plaintiff has failed to identify the training shortcoming, and failed to show the causal connection, Plaintiff has equally failed to show that the Sheriff *knew* of and disregarded any insufficiencies that would have led to a denial of care of Ms. Hanchett.

## D. THE SHERIFF DID NOT FAIL TO SUPERVISE WITH RESPECT TO TURN KEY PERSONNEL

To the extent Plaintiff alleges that the Sheriff failed to supervise the competency of Turn Key employees, that claim fails as well. The standard governing failure to supervise is the same as that governing failure to train. To effectively plead municipal liability on the basis of Turn Key's inadequacies, Plaintiff must establish that facts available to the Sheriff put him on actual or constructive notice that acts or omissions by his staff were substantially certain to cause a violation of rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 396 (1989). To establish liability against a policymaker for a failure to train and/or supervise, Plaintiff *cannot rely on a single incident* of misconduct. *Bloom v. Toliver*, No. 12-CV-169-JED-FHM, 2015 WL 5577321, at \*5 (N.D. Okla. Sept. 22, 2015) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Despite the established authority, Plaintiff offers no evidence the Sheriff had notice of any purported competency shortcomings of any of the identified Turn Key employees. In other words, Plaintiff does not allege sufficient facts to show a history or pattern of failures that would have put the Sheriff on notice of any deficiencies in competency. Moreover, the conduct of Turn Key and its employees at *other* facilities has little, if any, bearing on the Sheriff's supervision of Turn Key employees at Cleveland County Detention Center. *See e.g.*, *Sweat v. Butler*, 90 F. Supp. 3d 773, 782 (W.D. Tenn. 2015).

Again, Plaintiff enumerates 19 incidents allegedly involving Turn Key's denials of medical care. Of these incidents, only 7 occurred at the Cleveland County Detention

Center. Two of these incidents occurred after Ms. Hanchett's detention. The remaining five are wholly dissimilar in facts, circumstances, and even medical condition. Even so, none of those are remotely similar in facts (or medical condition) to be sufficient to put the Sheriff on notice of any deficiencies in the competency of Turn Key employees at Cleveland County. Plaintiff must plausibly allege that the Sheriff was aware of a pattern of similar conduct at CCDC. He has failed to do so, thus, his deliberate indifference claims fail.

Furthermore, Plaintiff has again failed to allege a sufficient causal link connecting the Sheriff to the alleged harm. There is no allegation that the Sheriff knew those providing medical care to Ms. Hanchett were incapable of performing their duties, or that those providers had any previous incidents of shortcomings *and* that these shortcomings caused the death of Ms. Hanchett.

Finally, the Sheriff is not a medical professional, and Plaintiff does not suggest or allege that he is. Thus, it is entirely reasonable and constitutional for the Sheriff to rely upon a *medical care company,* Turn Key, to assess and ensure the competencies of its own employees. In a similar context, the Tenth Circuit, and other circuit courts, has opined that jail officials may reasonably rely upon the judgment of medical professionals. *See generally*, *Estate of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1265 (10th Cir. 2022) (citing *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009); *McGaw v. Sevier Cnty., Tennessee,* 715 Fed. Appx. 495, 498 (6th Cir. 2017); *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *Reece v. Hale*, 58 F.4th 1027, 1033–34 (8th Cir. 2023).

Without medical degrees or training like that obtained by the medical staff, detention officers inevitably *must* rely on medical staff for the care of inmates like Ms. Hanchett. *See e.g*., *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.")

## II. PLAINTIFF HAS FAILED TO ALLEGE SUFFICIENT FACTS TO SUPPORT THE CLAIM THAT TURN KEY'S POLICIES ARE UNCONSTITUTIONAL

As Plaintiff also alleges that Turn Key maintained unconstitutional policies at Cleveland County Detention Center, it behooves the Sheriff, as the final policymaker, to also address the claims against Turn Key. As stated before, Plaintiff asserts Turn Key maintained unconstitutional policy prioritizing "cost-cutting" over providing constitutionally satisfactory medical care to inmates. Again, Plaintiff provides zero factual support for this claim, merely declaring, "It is so," without providing any factual allegations. Plaintiff further fails to explain how any such cost-cutting provisions affected the care for Ms. Hanchett and how such provision led to her injuries.

As a final matter, Plaintiff's claims that the Sheriff (and Turn Key) maintained an "inadequate medical delivery system" at Cleveland County Detention Center fails for another reason: Plaintiff's claim in this respect is not of a constitutional dimension. This

Court is well aware that a difference of opinion between an inmate and medical staff as to the type of care does not create a constitutional violation.

The authorities on this point are clear: making the wrong choice, *i.e.*, a misdiagnosis, is insufficient to satisfy the subjective component of a deliberate indifference claim. *See Strain v. Regalado*, 977 F.3d 984, 996 (10th Cir. 2020); *Whitehead v. Marcantel*, 766 Fed. Appx. 691, 699 (10th Cir. 2019) ("At worst, [Mr. Whitehead alleged that Monk] misdiagnosed [Mr. Whitehead's] condition. But a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim.") (internal citations and quotations omitted for clarity). The facts, as alleged by Plaintiff, clearly show that medical staff at Cleveland County Detention Center maintained close observation and care of Ms. Hanchett. *See e.g.*, Doc. 1, ¶¶ 20-23, 28, 38, 40, 42, 43, 50, 51, 54, 57, 61-63, 65, 68, 70, 73-75, 77, 79. Thus, by his own allegations, Turn Key staff was not *deliberately indifferent* to Ms. Hanchett's medical needs.

## III. PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO DEMONSTRATE AN UNDERLYING CONSTITUTIONAL VIOLATION BY ANY COUNTY OR TURN KEY EMPLOYEE.

As discussed herein, it is well-settled that Section 1983 liability may not be imposed on a governmental entity on a *respondeat superior* basis. *Monell,* 436 U.S. at 691; *Seamons v. Snow,* 206 F.3d 1021, 1029 (10th Cir. 2000); *Williams v. City of Tulsa, OK*, 393 F.Supp.2d 1124, 1128 (N.D.Okla.2005) ("It is well established that municipalities do not incur liability under a theory of *respondeat superior* in a § 1983 suit."). Thus, in addition to alleging a municipal policy or custom was the moving force behind the alleged

constitutional deprivation as discussed *infra,* the Plaintiff must allege sufficient facts to demonstrate "a municipal employee committed a constitutional violation." *Myers v. Okla. County Bd. of County Comm'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998) *citing Monell,* 436 U.S. at 694. Plaintiff's municipal liability claim further fails as he has not alleged facts sufficient to demonstrate an underlying constitutional violation by any employee of the Cleveland County Sheriff's Office.

Plaintiff's claims for denial of medical care must be judged against the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009), quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). "[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain". *Estelle*, 429 U.S. at 104, citing *Gregg*, 428 U.S. at 173. "[E]very claim by a prisoner that he has not received adequate medical treatment" does not state "a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105.

A complaint alleging negligence in diagnosing or treating a medical condition does not become a valid constitutional claim of medical mistreatment simply because the victim is an inmate. *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Martin v. Creek County Jail*, 2010 WL 4683852, 3 (N.D. Okla. 2010). A jail official "cannot be liable for a claim of deliberate indifference 'unless the official knows of and disregards an excessive

risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Heidtke v. Corr. Corp. of Am.,* 489 Fed. Appx. 275, 279-80 (10th Cir. 2012) (quoting *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006)).

To prevail on his claim against the Sheriff, Plaintiff must first show that a County employee knew of and disregarded a substantial risk of harm to Ms. Hanchett by deliberately failing to take *any* action. "The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Id*. at 280. "[O]ur case law firmly establishes that 'the subjective component is not satisfied, absent an extraordinary degree of neglect'." *Heidtke* at 280 (quoting *Self* at 1232). "[I]n this Circuit, the 'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Heidtke*, id., quoting *Self* at 1233.

Plaintiff has failed to plead sufficient facts to show that any detention staff or Turn Key medical personnel was aware of *and deliberately disregarded* Ms. Hanchett's medical condition. Rather, by Plaintiff's own allegations, Ms. Hanchett was under the continuous care of the medical provider, and being seen regularly by medical staff. *See e.g.*, Doc. 1, ¶¶ 20-23, 28, 38, 40, 42, 43, 50, 51, 54, 57, 61-63, 65, 68, 70, 73-75, 77, 79. Plaintiff also fails to identify when or what specific actions or omissions were made by the Turn Key employees, and how those specific actions or omissions caused Ms. Hanchett's injury. Rather, as noted above, Plaintiff readily admits that several Turn Key nurses were continuously monitoring to Ms. Hanchett, and administering medical care on a regular

basis. Thus, Plaintiff has failed to allege sufficient facts to demonstrate any county employee committed an underlying constitutional violation that could impute municipal liability on to the Sheriff, in his official capacity.

## CONCLUSION

WHEREFORE, the Sheriff of Cleveland County, Oklahoma, in his official capacity, respectfully requests this Court dismiss Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiff has failed to state a claim upon which relief may be granted.

Respectfully submitted,

 s/ Jessica L. Dark
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
*Attorneys for Defendant Sheriff of Cleveland County, in his official capacity*

26

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel who have entered their appearance in this case.

 s/ Jessica L. Dark
Jessica L. Dark