IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL HANCHETT, as Personal Representative of the Estate of Shannon Hanchett, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>SHERIFF OF CLEVELAND COUNTY, et al.,<br><br>    Defendants. | Case No. 24-CV-87-J |

**DEFENDANT TURN KEY HEALTH CLINICS, LLC'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW Defendant Turn Key Health Clinics, LLC ("Defendant" or "Turn Key") and, pursuant to LCvR7.1(i), provides the following Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss.

## ARGUMENT & AUTHORITIES

I. **STANDARD OF REVIEW**

*Bell Atl. Corp. v. Twombly*, which answers the antecedent question of what a plaintiff must plead in order to state a claim in accordance with Fed. R. Civ. P. 8(a)(2) and to survive a Rule 12(b)(6) motion, sets forth a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. 550 U.S. 544, 555-557(2007); *Ashcroft v. Iqbal* 556 U.S. 662, 663-664 (2009). The Supreme Court suggests, a court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth and disregarding such. *Ashcroft*, 556 U.S. at 664; *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012). From this starting place, it is evident Plaintiff has not nudged his claims across the line from conceivable to plausible and consequently, the Complaint must be dismissed.

II. **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD TURN KEY PROVIDERS WERE DELIBERATELY INDIFFERENT TO MS. HANCHETT'S MEDICAL NEEDS.**

Plaintiff attempts to obfuscate the applicable standard as to a claim of deliberate indifference by citing to inapplicable and noncontrolling case law. Specifically, Plaintiff cites to two cases which discuss the standards potentially applicable to *prison jailers/correctional officers* in their duty of providing "reasonable safety from serious

1

bodily harm," typically assaults, which is separate and distinct from a *correctional health care providers* duty to provide "adequate medical care" under the Eight Amendment. *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008)(claim of deliberate indifference for failure to protect from sexual assault); *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999)(deliberate indifference claim for failure to protect from physical assault and medical needs thereafter). From the *Lopez* case, Plaintiff even cites directly from the section of the Opinion entitled "Liability for Failure to Protect." *Lopez*, 172 F.3d at 759. If Plaintiff would have read the entire *Lopez* opinion, the claim of deliberate indifference as to medical needs was further down and sets forth the correct standard applicable to such claims brought forth against correctional health care providers, which is deliberate indifference to a substantial risk of serious harm. *Lopez*, 172 F.3d at 764 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Despite what Plaintiff would like this Court to believe, the applicable standard continues to require a showing of "unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind" which is a high evidentiary hurdle. *Estelle*, 429 U.S. at 105-06; *Farmer v. Brennan*, 511 U.S. 825, 826 (1994); *Self v. Crum*, 439 F.3d 1227,1232 (10th Cir. 2006). It is not reasonableness or even negligence. *Estelle*, 429 U.S. at 104-106; *Duffield v. Jackson*, 545 F.3d 1234, 1239(10th Cir. 2008); *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803 (10th Cir. 1999); *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993); *Ledoux v. Davies*, 961 F.2d 1536, 1537(10th Cir. 1992); *El'Amin v. Pearce*, 750 F.2d 829 (10th Cir. 1984); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Jones v. McCracken*, 562 F.2d 22 (10th Cir. 1977); *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976); *Henderson*

2

*v. Sec'y of Corr.*, 518 F.2d 694 (10th Cir. 1975); *Paniagua v. Moseley*, 451 F.2d 228(10th Cir. 1971); *Coppinger v. Townsend*, 398 F.2d 392, 392-393 (10th Cir. 1968). With regard to the subjective component of deliberate indifference, the Supreme Court has straightforwardly set forth, there must be a "sufficiently culpable state of mind," and an individual cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006)(citing *Farmer*, 511 U.S. 825, 834, 837 (1994)).

With these requirements in mind, the Tenth Circuit set forth two types of conduct which **may** constitute deliberate indifference involving medical treatment in a prison: (1) a complete denial or unnecessary delay in a referral; (2) a complete denial or failure to treat. *Self*, 439 F.3d at 1231-32, (10th Cir. 2006)(quoting *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000)(emphasis added); *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). The Court further clarified a claim under this framework is only actionable where the need for additional treatment or referral to a medical specialist is obvious and the provider responds to an obvious risk with treatment that is patently unreasonable. *Id.* Where a medical professional provides a level of care consistent with the symptoms presented by the inmate, an inference of deliberate indifference is unwarranted, and the requisite state of mind cannot be met. *Id*. Specifically, absent an extraordinary degree of neglect, the subjective component is not satisfied where a provider merely exercises their medical judgment as to decisions "whether to consult a specialist or undertake additional medical

3

testing." *Id.*; *see also Estelle*, 429 U.S. at 107 (holding the Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated); *see also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). For example, in applying these principles, Courts have allowed a claim of deliberate indifference where a provider knew an inmate was suffering from severe chest pains yet "completely refused to assess or diagnose" the potential cardiac emergency but denied a claim where a provider set forth "a good faith effort to diagnose and treat [the inmate's] medical condition" despite failing to diagnose a heart attack. *Mata*, 427 F.3d at 755-61. This is the line between negligence and deliberate indifference – there must be **complete** denials/failures to provide care or unnecessary delays to place a referral to meet the high constitutional threshold, not "mere differences" in opinion over the adequacy of medical treatment. *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 (10th Cir. 2001). This distinguishable line is set forth in the very case cited by Plaintiff, *Prince*, where zero care was provided and zero referrals were placed for the inmate, which is not comparable to the case at hand. *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033 (10th Cir. 2022).

      In order to attempt to state a cognizable claim upon this foundation, Plaintiff repeatedly contradicts himself in an attempt to formulate a fact pattern that would support such claim. Specifically, in his Response, Plaintiff sets forth three (3) alleged facts he argues support Plaintiff's claim Turn Key providers were deliberately indifferent. Specifically, in his Response Plaintiff states "Turn Key employees or agents failed to provide any treatment or assessment of Ms. Hanchett; repeatedly failed to take her vitals;

4

and failed to refer her to an outside medical provider or more highly trained medical professional;" however, these are direct, brazen contradictions to facts as set forth in Plaintiff's Complaint. *See* Doc 45, p. 18. The allegations set forth in Plaintiff's Complaint state: (1) Ms. Hanchett was assessed, evaluated, and/or observed, on at least seventeen separate occasions, by at least seven different providers during her 10-day stay at CCJC (*See* Doc. 1, ¶¶ 20-23; 28-29; 31; 38; 40; 42-46; 48; 50-52; 54; 57-59; 61; 63; 65-70; 73-75; 77; 79-81); (2) upon arrival to Cleveland County Justice Center ("CCJC"), and on again on December 7, Ms. Hanchett's vitals were taken and were attempted to be taken on December 5 but Ms. Hanchett refused to receive medical treatment at this time (*See* Doc. 1, ¶¶ 22, 54; 57-59; 75); (3) and Ms. Hanchett was referred by LPC Myles-Henderson to be evaluated by non-defendant psychiatrist Dr. Jawaun Lewis who assessed Ms. Hanchett. *See* Doc. 1, ¶¶ 23, 28-29, 31, 33; 63-64. Further, Plaintiff alleges Mrs. Hanchett refused the medical care offered by Turn Key on multiple occasions but then argues Turn Key did not provide any medical treatment to Ms. Hanchett – how could Ms. Hanchett have the ability or opportunity to refuse medical treatment if none was ever attempted to be provided to her? *See* Doc 1, ¶ 43, 58-59, 61, 68-69; *See* Doc. 45, p. 3.

Plaintiff's own allegations emphasize Plaintiff's inability to set forth facts sufficient to support a claim of deliberate indifference. Plaintiff likely realizes these shortcomings, which is why Plaintiff has set forth specific facts in his Complaint but then misstates and misrepresents them in his Response in order to contrive a claim of deliberate indifference where one does not exist. Plaintiff's claim of deliberate indifference are not based in fact or even on Plaintiff's own allegations, but are only supported by conclusory allegations

that fail to state a claim that is plausible on its face. No matter how Plaintiff twists the facts, this is not a case where there was, either, a complete denial of care or a failure to place a referral for Ms. Hanchett. The fact is, as based on Plaintiff's own allegations, Ms. Hanchett was provided care by Turn Key providers and assessed by a doctor based on the referral provided by a Turn Key provider. *See* Doc. 1, ¶¶ 20-23; 28-29; 31; 33; 38; 40; 42-46; 48; 50-52; 54; 57-59; 61; 63-64; 65-70; 73-75; 77; 79-81. The care provided by Turn Key providers cannot be said to have been inconsistent with the symptoms presented, patently unreasonable, woefully inadequate, or the functional equivalent of the denial of medical care that is repugnant to the conscience of mankind. *Self*, 439 F.3d at 1231-32, (10th Cir. 2006)(quoting *Sealock*, 218 F.3d 1205); *see also Mata*, 427 F.3d at 755. Plaintiff's allegations merely amount to a disagreement in the care provided to Ms. Hanchett, which is a claim that sounds in negligence and, according to the U.S. Supreme Court, cannot rise to the level of a constitutional violation. Defendant simply requests this Court follow the case law precedent cited by Plaintiff which directly affirms Plaintiff's Complaint does not plausibly allege a §1983 claim alleging cruel and unusual punishment and must be dismissed pursuant to Rule 12(b)(6). *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033 (10th Cir. 2022). Plaintiff has failed to set forth facts sufficient to support the allegation Turn Key exhibited an extraordinary degree of neglect amounting to a conscience disregard Ms. Hanchett's health and safety to the level of a sufficiently serious deprivation. As such, Plaintiff's Complaint does not plausibly allege a §1983 claim alleging cruel and unusual punishment and must be dismissed pursuant to Rule 12(b)(6).

**III.     PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO STATE A CONSTITUTIONAL CLAIM AGAINST DEFENDANT TURN KEY BASED ON A MUNICIPAL LIABILITY THEORY UNDER EITHER *MONELL* OR *CROWSON*.**

Plaintiff has failed to establish Turn Key is liable through the application of either the traditional *Monell* pattern of proof or the limited *Crowson* exception to the municipal theory of liability. In Plaintiff's Response, Plaintiff requests this Court apply Texas or Kansas law to allow him an exception to not set forth the requirements to establish a *prima facie* case of municipal liability as required by the United States Supreme Court and adopted under Oklahoma law. Specifically, Plaintiff would like a pass to be allowed to advance his claim of municipal liability based only on the conclusory allegations as Plaintiff, admittedly, has not and cannot provide facts specific to support this claim.

"To establish municipal liability under a *Monell* theory, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691-92 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Plaintiff has failed to establish the alleged practices and/or customs were present at CCJC at the time of Ms. Hanchett's incarceration or that they were the direct causal link that caused any alleged constitutional deprivation to Ms. Hanchett. Plaintiff also erroneously argues he does not need to establish that Turn Key maintained the requisite final decision-making authority over any policies or practices at CCJC in order to set forth a claim of municipal liability under this theory.

7

However, the Supreme Court, in the *Monell* case, specifically set forth this requirement and Plaintiff, admittedly, has no facts to support this element. *See Monell*, 436 U.S. at 694.

Plaintiff has further failed to properly set forth support for his claim of Turn Key's failure to train or supervise, as such requires a showing the underlying deprivation was caused by the individual who allegedly was improperly trained or supervised. *Crowson v. Wash. Cty. State of Utah*, 983 F. 3d 1166, 1187 (10th Cir. 2020).

Plaintiff also wholly fails to argue or allege a single fact to support any of the elements of a finding of municipal liability based on the *Crowson* theory. *Crowson*, 983 F. 3d at 1187. Even such, the *Crowson* exception is inapplicable to the specific claims set forth by Plaintiff as the *Crowson* theory of liability applies to cases where there is not an allegation a constitutional violation occurred as a result of a specifically identified individuals' action, but occurred as a result of multiple officials' actions or inactions. *Id.*

In fact, regardless of whether analyzed under the traditional *Monell* theory of liability or the limited *Crowson* exception, without facts sufficient to support an underlying constitutional deprivation, Plaintiff's claim of municipal liability is unsubstantiated and based only upon bald, conclusory allegations with no factual support alleged, which are insufficient as a matter of law to support Plaintiff's claim. Further, Plaintiff should be estopped from pursuing a claim of municipal liability based on the *Crowson* theory of liability due to Plaintiff's failure to counter Defendant's arguments that Plaintiff has failed to establish liability under this theory and such does not apply to this matter.

Plaintiff has set forth nothing more than vague, boilerplate allegations to support his claim of municipal liability and has failed to state a claim for municipal liability under §

8

1983 against Turn Key and, pursuant to Rule 12(b)(6), Plaintiff's claims against Turn Key must be dismissed.

IV. **PLAINTIFF HAS FAILED TO STATE PROPER CLAIMS ARISING UNDER OKLAHOMA LAW.**

a. **Defendants are immune from Plaintiff's state law tort claims under the Oklahoma Governmental Tort Claims Act.**

Plaintiff's claims must fail because Defendant Turn Key is entitled to immunity under the Oklahoma Governmental Tort Claims Act ("GTCA"). In his Response, Plaintiff argues Defendants are not entitled to such immunity despite the pronunciation by the Oklahoma Supreme Court in *Barrios v. Haskell Cnty. Pub. Facilities Auth*; however, Plaintiff's argument is flawed. 2018 OK 90, 432 P.3d 233 Consistent with the finding of the Oklahoma Supreme Court, the plain language of the GTCA supports a finding that Defendant Turn Key and its providers are considered "employees" and entitled to tort immunity. Okla. Stat. tit. 51, § 152(7)(b)(7). The GTCA provides in pertinent portion that an "employee" includes "licensed medical professionals under contract with the city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." *Id.* Plaintiff admits in his Complaint that Turn Key was under contract with CCJC to provide medical care and treatment to the inmates and pretrial detainees at the time of the events at issue. *See* Doc. 1 ¶¶ 3; 91; 94-98. It is further undisputed that Turn Key satisfied its responsibilities under the contract with CCJC by supplying licensed healthcare providers to deliver medical care to the inmates and pretrial detainees who were in the custody of CCJC. *Id.*

Plaintiff's claims against Defendants arise from the provision of medical care provided to Shannon Hanchett at CCJC from November 27, 2022 to December 8, 2022. *See* Doc. 1, ¶¶ 20-23; 85-86. The Oklahoma Supreme Court, in *Barrios*, correctly included correctional health care contractors and its employees under the immunity provided to employees of the state. *Barrios*, 2018 OK 90, 432 P.3d 233. Such inclusion is fitting, as an entity can only act through its employees, and where such employees are entitled to tort immunity, so too should the employer entity be entitled to immunity. In his Response, Plaintiff entirely fails to acknowledge or otherwise attempt to reconcile the vast number of Courts, including the Oklahoma Court of Civil Appeals ("COCA") who have specifically pronounced and recently reaffirmed correctional health care contractors and its employees, such as Turn Key and its providers are classified as "employees" under the GTCA and, therefore, protected by its provisions. It is clear that the Oklahoma Supreme Court, which was recently reaffirmed by COCA, along with the United States District Courts for the Western District and the Northern District, have explicitly extended immunity from liability for tort claims to a jail's health care contractor such as Turn Key and its employees. *See Martin*, Case No. 120, 422, p. 8-10 (OK CIV APP Feb. 27, 2024); *Nayebyazdi v. Turn Key*, Case No. 119,652, p. 8-9 (OK CIV APP Oct. 14, 2021). The opinion Turn Key should not be defined as an "employee" because it is not a "person" is contrary to direct statutory law, which states a "person" "includes not only human beings, but bodies politic or corporate." Okla. Stat. Ann. tit. 25, § 16; *see also Sanders v. Turn Key*, Case No. 121,589, p. 14 (OK CIV APP March 1, 2024). It would be unjust to require Defendant to defend claims from which the Supreme Court of Oklahoma has already decided, and COCA has

10

recently reaffirmed, Defendant is immune as Defendant must be regarded as an "employee" under the GTCA. *See Barrios*, 2018 OK 90, 432 P.3d 233, ¶ 5; *Martin*, Case No. 120, 422, p. 8-10 (OK CIV APP Feb. 27, 2024); *Nayebyazdi*, Case No. 119,652, p. 8-9 (OK CIV APP Oct. 14, 2021).

As Turn Key provides licensed medical providers to deliver medical care to those in custody at CCJC pursuant to a contract, Turn Key and its employees qualify as a statutory "employee" under the GTCA. As such, Plaintiff's state law claims against Defendant Turn Key must be dismissed at this time pursuant to Federal Rule of Civil Procedure 12(b)(6).

    **b. Plaintiff's State Law Claims are barred by the Statute of Limitations.**

Even if this Court holds the GTCA does not confer immunity on Defendant, Plaintiff's state law claims against Defendant still fail where Plaintiff failed to bring such claims within the applicable statute of limitations. Plaintiff argues Okla. Stat. Ann. tit. 12, § 95(A)(11) is inapplicable to this matter but such argument is misplaced. This statute does apply to inmates bringing forth actions, but also applies to matters "based upon facts that occurred while the" subject at issue in the lawsuit "was an inmate in the custody of the State of Oklahoma; a contractor of the State of Oklahoma; or a political subdivision of the State of Oklahoma." Okla. Stat. Ann. tit. 12, § 95(A)(11). These actions may be brought by the inmate **or** a person, such as Plaintiff. *Id.*

Plaintiff directs this Court to *Huffman v. Avalon Corr. Servs.*, and claims this case holds Okla. Stat. Ann. tit. 12, § 95(A)(11) is inapplicable to actions, such as this one. No. CIV-05-856-L, 2006 U.S. Dist. LEXIS 81852 (W.D. Okla. Nov. 7, 2006). However, the

Court in *Huffman* made no such ruling and did not even analyze the arguments related to the applicable statute of limitations as the Court simply stated: "the court need not address Foster's statute of limitations argument." This is, again, an example of Plaintiff providing unabashed misrepresentations to this Court – which is a theme throughout Plaintiff's Responses in this matter with numerous contradictions and misstatements of the facts and law.

It is straightforward, the statute of limitations to file tort claims against Defendant ran on December 8, 2023. Okla. Stat. Ann. tit. 12, § 95(A)(11). Plaintiff did not file his Complaint against Turn Key until February 25, 2024 – almost three (3) months after the statute of limitations had expired. Consequently, Plaintiff's state law tort claim against Defendant must be dismissed as a matter of law, as such is barred by the applicable statute of limitations.

## CONCLUSION

Plaintiff's Complaint is properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiff have failed to allege facts sufficient to support a claim of deliberate indifference or municipal liability as to Defendant Turn Key. Further, Defendant Turn Key is immune from Plaintiff's state law claim of wrongful death pursuant to the GTCA and such claims are barred by the applicable statute of limitations. Therefore, dismissal of Plaintiff's claims against Defendant Turn Key is appropriate at this time on the various grounds set forth above.

WHEREFORE, Defendant Turn Key Health Clinics, LLC prays this Court grant this Motion and dismiss this action in its entirety.

Respectfully submitted,

*s/ Meilani C. Kaaihue*
Sean P. Snider, OBA #22307
Anthony C. Winter, OBA #32148
Meilani C. Kaaihue, OBA #33931
JOHNSON HANAN VOSLER
HAWTHORNE & SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: 405.232.6100
Facsimile: 405.232.6105
ssnider@johnsonhanan.com
awinter@johnsonhanan.com
mkaaihue@johnsonhanan.com
*Attorneys for Defendant Turn Key Health Clinics, LLC*

13

CERTIFICATE OF SERVICE

    I hereby certify that on the 21st day of May, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

                                              */s/ Meilani C. Kaaihue*
                                              Meilani C. Kaaihue