**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DANIEL HANCHETT, as Personal Representative of the Estate of Shannon Hanchett, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-24-87-J |
| SHERIFF OF CLEVELAND COUNTY, in his Official Capacity, et al., | ) ) ) | |
| Defendants. | ) ) | |

**<u>ORDER</u>**

Before the Court is the Motion to Dismiss by Defendant Turn Key Health Clinics, LLC (Turn Key) [Doc. No. 27].  Plaintiff has filed his response, and Turn Key has filed a reply.

**I.     <u>Background</u>**[1]

In 2022, Shannon Hanchett (Ms. Hanchett) began to exhibit signs of mental illness consistent with bipolar disorder and/or schizophrenia.  On the evening of November 26, 2022, while in an AT&T store, Ms. Hanchett, who was exhibiting signs of a mental health episode, called 911, and a Norman police officer responded to the scene.  The officer ultimately arrested Ms. Hanchett for misdemeanor obstruction and transported her to the Cleveland County Jail (Jail).

Upon Ms. Hanchett's arrival at the Jail, Nurse Danille Hay, LPN, began the medical intake process but was unable to complete it due to Ms. Hanchett's mental state.[2]  Ms. Hanchett was then placed in a general population cell.

---

[1] The facts contained in this Background are based on the facts contained in the Complaint [Doc. No. 1].

[2] Nurse Hay was able to take Ms. Hanchett's vital signs; both her blood pressure and pulse were elevated.

Plaintiff alleges that based upon the medical records, it appears that no employee/agent of Turn Key assessed, evaluated, or treated Ms. Hanchett from the time she was booked until the evening of November 30.  On that day, Defendant Diana Myles-Henderson, LPC (LPC Myles-Henderson) found Ms. Hanchett lying on the floor of her cell completely naked and incoherent. Ms. Hanchett was placed on suicide watch,[3] but Plaintiff alleges that the jail staff repeatedly failed to conduct the 15-minute checks required for those inmates on suicide watch.

Plaintiff further alleges that between November 30 and December 2, Ms. Hanchett was not evaluated or treated by a physician, RN, LPN, NP, PA, or LPC Miles-Henderson and was left alone in her cell, laying naked, in a state of catatonia.  On December 1, 2022 at 10:40 a.m., LPN Kariuki charted that she observed Ms. Hanchett lying "on the floor talking to herself," but she did not complete the medical intake for Ms. Hanchett, take her vital signs, provide an assessment or treatment, nor call a physician or higher level provider.  On December 1, 2022 at 7:05 p.m., Nurse Hay noted that she observed Ms. Hanchett pacing in her cell and talking to herself but did not complete a medical intake for Ms. Hanchett, take her vital signs, provide any assessment or treatment, nor call a physician or higher level provider.  On December 2, 2022 at 6:00 p.m., Turn Key Nurse Tara Doto, LPN noted that she observed Ms. Hanchett "yelling at window."  Nurse Doto also took no additional steps to assess or treat Ms. Hanchett or refer her to a higher level medical or mental health provider.

On December 4, 2022, at around 11:00 a.m., LPC Myles-Henderson saw Ms. Hanchett again and observed that she was in essentially the same position and mental health condition that she had been on November 30.  LPC Myles-Henderson charted that her plan was to refer Ms.

---

[3] At the time she was placed on suicide watch, Ms. Hanchett had not completed a medical intake and had not been assessed, evaluated, or treated by a physician, PA, RN, LPN, or NP.

Hanchett to both "security" and to "medical staff for medication evaluation." Nurse Doto observed Ms. Hanchett on December 4, 2022, at 8:05 p.m., laying on the floor and talking to herself, but Nurse Doto did not assess or treat Ms. Hanchett or refer her to a higher level medical or mental health provider. On December 5, 2022, LPC Myles-Henderson saw Ms. Hanchett again and noted that she was avoidant, psychotic, and indifferent; was not responsive; and was lying nude on the floor.

On December 6, 2022, at approximately 11:30 a.m., Ms. Hanchett was seen by Turn Key psychiatrist Jawaun Lewis, MD. Dr. Lewis determined that Ms. Hanchett should be left at the Jail. Later that night, LPN Kariuki took Ms. Hanchett to a holding cell to attempt to complete a medical intake but was unable to complete the intake and noted that Ms. Hanchett should stay housed in processing until she has been cooperative during the intake process. Ms. Hanchett was ultimately placed back in a suicide watch cell.

On December 7, 2022, at approximately 9:30 a.m., LPN Kariuki was called to perform a welfare check on Ms. Hanchett. LPN Kariuki took Ms. Hanchett's vitals. Her blood pressure was very low, and she had not been eating or drinking for several days. LPN Kariuki noted that per Turn Key Nurse Practitioner Becky Pata, Ms. Hanchett was to be given Gatorade for five days and would need to be monitored drinking water. At approximately 12:09 p.m., Turn Key Nurse Amanda Smith charted that Ms. Hanchett was cleared to move to medical housing and to have clothes. A little after 4:30 p.m., LPC Myles-Henderson saw Ms. Hanchett again and noted that Ms. Hanchett had not been eating or taking medication, lacked appropriate hygiene, had auditory and visual hallucinations, and had poor insight.

Shortly after midnight on December 8, 2022, Nurse Doto discovered Ms. Hanchett sitting up against the toilet and not responding to her name. Nurse Doto called 911 and attempted CPR.

Ms. Hanchett, however, had no pulse and was not breathing.  Resuscitation efforts were not successful, and shortly thereafter, she was declared deceased.  The Medical Examiner's office determined that Ms. Hanchett died of heart failure.  Other significant conditions contributing to her death were psychosis with auditory and visual hallucinations and severe dehydration.

On January 25, 2024, Plaintiff filed this case, alleging various 42 U.S.C. § 1983 claims against all Defendants and a negligence claim against Turn Key.  In relation to Turn Key, Plaintiff asserts a § 1983 municipal liability claim[4] and a state law negligence claim.  Specifically, Plaintiff alleges the acts and omissions of the Jail's and/or Turn Key's staff in being deliberately indifferent to Ms. Hanchett's health and safety are causally connected to Turn Key's customs, policies, and/or practices for providing medical care.  Turn Key now moves to dismiss Plaintiff's § 1983 claim and negligence claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

## II.   <u>Standard for Dismissal under Rule 12(b)(6)</u>

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the non-moving party. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).  To avoid dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  A court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief

---

[4] Plaintiff alleges that Turn Key was acting under color of state law.

under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations and citation omitted).

III.    <u>**Analysis**</u>

A.    **§ 1983 Claim**

Plaintiff alleges that Turn Key was acting under color of state law and is liable because the alleged acts and/or omissions of Turn Key's staff in being deliberately indifferent to Ms. Hanchett's health and safety are causally connected to Turn Key's customs, practices, and policies. *See* Complaint [Doc. No. 1] at ¶¶ 262, 266.  Plaintiff further alleges that Turn Key failed to take reasonable steps to alleviate the risks to the health and safety of inmates, such as Ms. Hanchett, in deliberate indifference to their serious medical needs.  Deliberate indifference means the individual "knows of and disregards an excessive risk to inmate health or safety" and "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1262-63.  A negligent failure to provide adequate medical care is not enough to show deliberate indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 105-6 (1976); *Perkins v. Kan. Dep't of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

In separate orders issued this same date, the Court concludes that Plaintiff has not alleged sufficient facts showing that either LPC Myles Henderson, LPN Kariuki, or any other municipal employee was deliberately indifferent to Ms. Hanchett's serious medical needs.  Additionally, having carefully reviewed Plaintiff's Complaint, and accepting the facts alleged in the Complaint as true, and viewing those facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not alleged sufficient facts to show that any Turn Key employee, alone or in combination with other Turn Key employees, was deliberately indifferent to Ms. Hanchett's health and safety.

Accordingly, Plaintiff's § 1983 claim against Turn Key should be dismissed.

**B.    Negligence Claim**

Plaintiff has also alleged a state law negligence claim against Turn Key.  Turn Key has moved to dismiss this claim, asserting that it is immune from Plaintiff's negligence claim under the Oklahoma Governmental Tort Claims Act and that the claim is barred by the applicable statue of limitations.  Since the Court is dismissing all of Plaintiff's § 1983 claims against Defendants, and will be declining to exercise supplemental jurisdiction over Plaintiff's negligence claim if Plaintiff is unable to amend his complaint to properly state a § 1983 claim against any defendant in this case, the Court declines, at this time, to address whether Plaintiff's negligence claim should be dismissed.[5]

**IV.    Conclusion**

For the reasons stated above, the Court GRANTS Turn Key's Motion to Dismiss [Doc. No. 27].

IT IS SO ORDERED this 19th day of August, 2024.



BERNARD M. JONES
UNITED STATES DISTRICT JUDGE

---

[5] If Plaintiff ultimately sufficiently alleges a § 1983 claim, the Court will address whether Plaintiff's negligence claim should be dismissed.