**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DANIEL HANCHETT, as Personal Representative of the Estate of Shannon Hanchett, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF OF CLEVELAND COUNTY, et al.,<br><br>Defendants. | Case No. 24-CV-87-G |

---

# DEFENDANT TURN KEY HEALTH CLINICS, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ *i*

TABLE OF AUTHORITIES ........ *iii*

STATEMENT OF THE CASE ........ 1

ARGUMENT AND AUTHORITIES ........ 7

I. STANDARD OF REVIEW ........ 7

II. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS PLAINTIFF HAS FAILED TO STATE PROPER CLAIMS ARISING UNDER FEDERAL LAW. ........ 8

1. Plaintiff has failed to allege facts sufficient to show Turn Key providers were deliberately indifferent to a substantial risk of serious harm to Ms. Hanchett. ........ 8

2. Plaintiff has failed to allege facts sufficient to state a constitutional claim against Defendant Turn Key based on a Municipal Liability theory. ........ 10

a. Plaintiff has failed to establish Defendant Turn Key was liable under the *Monell* Theory of Municipal Liability. ........ 12

b. Plaintiff has failed to establish Turn Key was liable under the *Crowson aka* the Systemic Failure, Theory of Municipal Liability. ........ 21

3. Plaintiff has failed to plead facts sufficient to support a claim of unconstitutional conditions of confinement as to Turn Key. ........ 24

III. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS PLAINTIFF HAS FAILED TO STATE PROPER CLAIMS ARISING UNDER OKLAHOMA LAW. ........ 25

1. Defendant Turn Key remains immune from Plaintiff's state law tort claims under the Oklahoma Governmental Tort Claims Act ........ 25

2. Plaintiff's State Law Claims against Defendants are barred by the applicable Statute of Limitations. ........ 32

CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

CASES

*Allen v. Yates*, No. CIV-08-215-FHS, 2009 WL 811515 (E.D. Okla. Mar. 24, 2009)....... 29

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................. 7, 9

*Barrios v. Haskell Cty. Pub. Facilities Auth.,* 2018 OK 90, 432 P.3d 233 ............................ ................................................................................................. 26, 27, 28, 29

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ........................................... 11, 17, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 7, 9, 19

*Birdwell v. Glanz*, Case No. 15-CV-304-TCK-FHM (N.D. Okla. Mar. 12, 2019)............ 28

*Bradshaw v. Armor Corr. Health Serv's., Inc.*, No. 17-CV-615-TCK-FHM, 2019 WL 1675148 (N.D. Okla. April 17, 2019)................................................................. 28

*Burke v. Regalado*, 2019 WL 1371144 (N.D. Okla. Mar. 26, 2019) ................................ 28

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)....................................................... 12

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)... 16

*Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) .............. 11

*Crocker v. Armor Corr. Health Serv's, Inc.*, No. 17- CV-149-TCK-FHM, 2019 WL 2146595 (N.D. Okla. May 16, 2019)................................................................................... 28

*Crowson v. Wash. Cty. State of Utah*, 983 F. 3d 1166 (10th Cir. 2020)..... 11, 12, 13, 21, 22

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) .................................................. 13

*Espinosa Hernandez v. Armor Corr. Health Serv's., Inc.*, 2019 WL 3069430 (W.D. Okla. Mar. 11, 2020).................................................................................................. 27

*Estate of Burgaz v. Bd. of Cty. Comm'rs for Jefferson Cty.*, Colorado, 30 F.4th 1181 (10th Cir. 2022) ........................................................................................................ 13, 21

*Estelle v. Gamble*, 429 U.S. 97, (1976) ........................................................................ 8

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................................................................. 8, 13

*Fisher v. Glanz*, No. CIV-14-678-TCK, 2016 WL 1175239 (N.D. Okla. Mar. 24, 2016) .... ................................................................................................................................ 29

*Garcia v. Salt Lake Cnty.*, 768 F.2d 303 (10th Cir. 1985) .............................. 11, 12, 21, 22

*Hall v. Bellmon,* 935 F.2d 1106 (10th Cir. 1991)............................................................... 7

*Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163 (D.N.M.)........................................... 9

*Hicks v. Whetsel*, No. CIV-16-5532-M, 2016 WL 6459809 (W.D. Okla. Oct. 31, 2016) ..... ........................................................................................................................... 29, 30

*Holland v. Glanz*, No. 16-CV-349-JED-JFJ, 2019 WL 4781869 (N.D. Okla. Sept. 30, 2019) ................................................................................................................................ 28

*Hutto v. Finney*, 437 U.S. 678, (1978)................................................................................ 24

*Koch v. Juber*, No. CIV-13-0750-HE, 2014 WL 2171753 (W.D. Okla. May 23, 2014) ... 29

*Koch v. Koch Indus., Inc.*, 203 F. 3d 120 (10th Cir. 2000) ............................................... 29

*Martin v. Armor Corr. Health Serv's, Inc.*, Case No. 120,422 (OK CIV APP Feb. 27, 2024) ........................................................................................................................... 27, 28

*Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987) ........................................................ 16

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)............ 10, 11, 12, 13

*Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313 (10th Cir. 1998) .................. 19

*Nayebyazdi v. Turn Key*, Case No. 119,652 (OK CIV APP Oct. 14, 2021)....................... 27

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ....................................................... 12

*Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-282-CVE-JFJ, 2019 WL 238153 (N.D. Okla. Jan 16, 2019).................................................................................................... 28

*Quintana v. Santa Fe. Cnty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020)..... 11, 13, 22

*Rhodes v. Chapman*, 452 U.S. 337 (1981) ...................................................................... 24

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007) .......................... 7

*Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244 (5th Cir. 2003) ....................................... 16

*Sanders v. Turn Key*, Case No. 121,589 (OK CIV APP March 1, 2024) .......................... 27

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013) ............... ....................................................................................................... 9, 12, 13, 14

*Strain v. Armor Corr. Health Care Serv's., Inc.*, No. 19-CV-527-JED-FHM, 2020 WL 5026548 (N.D. Okla. Aug. 25, 2020) ......................................................................... 27

*Thompson v. Norman Reg'l Hosp.*, CIV-19-113-SLP (W.D. Okla. Mar. 11, 2020) .......... 27

*Thompson v. Turn Key Health Clinics, LLC*, 5:19-CV-00113-SLP (W.D. Okla. March 11, 2020) ......................................................................................................... 27, 28

*Waller v. City & County of Denver*, 932 F.3d 1277 (10th Cir. 2019) ............. 11, 13, 16, 20

*Whitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000) .................................... 12, 13, 17

*Williams v. Denver*, 153 F.3d 730 (10th Cir. 1998) ........................................................ 19

<u>RULES</u>

Fed. R. Civ. P. 12(b)(6) ................................................................ 1, 7, 8, 9, 23, 29, 30

<u>STATUTES</u>

42 U.S.C. § 1983 ............................................................... 2, 8, 10, 20, 21, 23, 24, 30

Okla. Stat. Ann. tit. 12, § 95 .................................................................................. 29, 30

Okla. Stat. Ann. tit. 51, § 152 ...................................................................... 25, 26, 28

Okla. Stat. Ann. tit. 51, § 152.1 ........................................................................... 25

Okla. Stat. Ann. tit. 51, § 153 ............................................................................... 26

Okla. Stat. Ann. tit. 51, § 155 ........................................................................... 26, 28

Okla. Stat. Ann. tit. 59, § 567.3 ........................................................................... 19

Okla. Stat. Ann. tit. 59, § 1902 ........................................................................................ 19

ADMINISTRATIVE CODES

Okla. Admin. Code §485:10-15-6(b)........................................................................ 19

COMES NOW Defendant Turn Key Health Clinics, LLC ("Defendant" or "Turn Key") and moves this Court to dismiss this action against it pursuant to Fed. R. Civ. P. 12(b)(6) and the applicable statute of limitations. In support thereof, Defendant respectfully shows the following:

**STATEMENT OF THE CASE**

1. On January 25, 2024, Michael Hanchett, as the Personal Representative of the Estate of Shannon Hanchett, filed a Complaint alleging claims of deliberate indifference via municipal liability and negligence as to this Defendant related to Ms. Hanchett's incarceration at Cleveland County Justice Center ("CCJC") from approximately November 27 to December 8, 2022. *See* Doc. 1, ¶¶ 254-257; 259.

2. In Response to this Complaint, Defendant filed a Motion to Dismiss on March 12, 2024 which was granted by this Court on August 19, 2024. *See* Docs. 27 & 55.

3. In the Order dismissing Turn Key as a Defendant, this Court concluded "Plaintiff has not alleged sufficient facts to show that any Turn Key employee, alone or in combination with other Turn Key employees, was deliberately indifferent to Ms. Hanchett's health and safety." *See* Doc. 55, p. 5.

4. In an attempt to formulate a cognizable claim, on September 9, 2024, Plaintiff filed seventy-three (73) page Amended Complaint but conspicuously left out over thirty-three (33) paragraphs of facts previously alleged specifically relating to the care and treatment provided to Ms. Hanchett by Turn Key. *Compra* Docs. 1 & 57, *see* specifically Doc. 1, ¶¶ 28-29; 31; 38; 40; 42-48; 50-51; 54; 57-58; 63; 65-66; 68-69; 72-74; 76-77; 79-81; 83; 85-86.

5. In this Amended Complaint, Plaintiff alleges Defendant Turn Key is a private correctional health care company that contracts with counties, including Cleveland County, to provide medical professional staffing, supervision, and care in county jails. *See* Doc. 57, ¶ 3.

6. Plaintiff alleges Turn Key was responsible for providing medical services, supervision, and medication to Ms. Hanchett while she was in custody at CCJC and for creating, implementing and maintaining policies, practices, and protocols that govern the provision of medical and mental health care to inmates at the Jail, and for training and supervising its employees. *See* Doc. 57, ¶ 3.

7. Plaintiff further states, Turn Key was endowed by the Cleveland County/Cleveland County Sherriff's Office with powers or functions governmental in nature, such that Turn Key became an agency or instrumentality of the State. . . *See* Doc. 57, ¶ 3.

8. Plaintiff's Amended Complaint claims, Defendant Turn Key violated Shannon Hanchett's constitutional right to receive adequate health care and humane conditions of confinement in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution (via 42 U.S.C. § 1983) and was negligent in the care and treatment provided to Ms. Hanchett. *See* Doc. 57, ¶¶ 311-320; 323-339; 351-358.

9. According to the allegations contained in Plaintiff's Amended Complaint, Ms. Hanchett began receiving medical care and treatment at CCJC on or about November 27, 2022, when the medical intake screening was started but was unable to be completed due to Ms. Hanchett's refusal to cooperate. *See* Doc. 57, ¶¶ 22-25.

10. Plaintiff alleges, during this medical intake screening, Ms. Hanchett only informed Danille Hay, LPN she suffered from lupus and bipolar disorder and refused to inform LPN Hay of any medications prescribed to her. *See* Doc. 57, ¶¶ 22-25.

11. Plaintiff alleges on November 29, Ms. Hanchett was observed by Natasha Kariuki, LPN. *See* Doc. 57, ¶ 46.

12. Plaintiff now states to this Court that when Ms. Hanchett identified as a risk to herself or others on November 30, she had been "provided no medical or mental health evaluation, treatment, or care." However, this is at odds with Plaintiff's allegations contained in Plaintiff's original Complaint, namely that Ms. Hanchett was assessed by Licensed Professional Counselor Myles-Henderson on November 30 and referred her to psychiatrist Jawaun Lewis, M.D., for a mental health evaluation. *Compra* Doc. 57, ¶ 55 to Doc. 1, ¶ 26-31.

13. Plaintiff alleges on December 1, Ms. Hanchett was, again, observed by LPN Kariuki and was observed throughout the day on December 2 by various Turn Key staff. *See* Doc. 57, ¶ 60, 64.

14. According to the Amended Complaint, on December 3 and 4, Plaintiff states Ms. Hanchett was observed by Tara Doto, LPN. *See* Doc. 57, ¶ 72, 74.

15. Plaintiff alleges, also on December 4, Ms. Hanchett was assessed by LPC Myles-Henderson for the **second** time and confirmed her previous treatment plan of continuing Ms. Hanchett on suicide watch with referrals to security and medical personnel capable of treating the condition – psychiatrist Jawaun Lewis, M.D. for a mental health

evaluation – and also noted Ms. Hanchett "refused to interact with staff and this provider." *See* Doc. 57, ¶ 79, 80. [1]

16. Plaintiff states, on December 5, LPC Myles-Henderson assessed Ms. Hanchett for a **third** time. *See* Doc. 57, ¶ 93.

17. According to the Amended Complaint, on December 5, LPN Doto observed Ms. Hanchett and attempted to take her vital signs but was unable to do so due to Ms. Hanchett's refusal to receive medical treatment. *See* Doc. 57, ¶¶ 97-100.

18. The Amended Complaint provides, on December 6, Ms. Hanchett was observed by Jewel Johnson, LPN, who also noted Ms. Hanchett continued to refuse to respond to provider inquiries. *See* Doc. 57, ¶ 103.

19. According to the allegations set forth by Plaintiff, based on the referral made by LPC Myles-Henderson, on December 6, Ms. Hanchett was evaluated by psychiatrist Jawaun Lewis, DO, who performed a mental health evaluation. *See* Doc. 57, ¶¶ 106-107; *see also* Doc. 1, ¶ 26-31.

---

[1] Plaintiff has attempted to make this Court believe LPC Myles-Henderson did not assess, evaluate, or provide care to Ms. Hanchett until December 4; however, Plaintiff previously pled as fact, that LPC Myles-Henderson first evaluated Ms. Hanchett on November 30 and performed an assessment of Ms. Hanchett where she refused to inform LPC Myles-Henderson of any medications prescribed to her, including any psychotropic medications. and, as a result, created and drafted a treatment plan that included placing Ms. Hanchett on suicide watch for her own protection "as she presented to be a threat to herself and others due to her defiance;" referring her to security; and referring her to psychiatrist Jawaun Lewis, M.D., for a mental health evaluation. *See* Doc. 1, ¶ 26-31; 33.

20. On this date, Plaintiff alleges LPN Kariuki also rescheduled to attempt to complete Ms. Hanchett's medical intake screening at another time. *See* Doc. 57, ¶ 109.[2]

21. The Amended Complaint provides, on December 7, LPN Kariuki again evaluated Ms. Hanchett and took her vitals. *See* Doc. 57, ¶¶ 117-118.

22. Plaintiff alleges, on December 8, Ms. Hanchett ultimately passed away. *See* Doc. 57, ¶¶ 138.[3]

23. According to the allegations contained in the Amended Complaint, Plaintiff does not allege Turn Key failed to provide care to Ms. Hanchett, rather to the contrary Plaintiff acknowledges, Ms. Hanchett was assessed, evaluated, and/or observed, on at least fourteen (14) separate occasions, by at least six (6) different providers but had only informed any provider she suffered from lupus and bipolar disorder but failed to report to any provider, at any time, of any medication(s) prescribed to her, including any psychotropic medication. *See* Doc. 57, ¶¶ 22-25; 46; 60; 64; 72; 74; 79; 80; 93; 97-100; 103; 106-107; 109; 130-131.

24. Notably, Plaintiff's Amended Complaint omits the facts previously alleged by Plaintiff that: (1) LPC Myles-Henderson first evaluated Ms. Hanchett on November 30 and performed an assessment of Ms. Hanchett, where she refused to inform LPC Myles-Henderson of any medication prescribed to her, including any psychotropic medication

[2] Plaintiff's Amended Complaint omits the statement previously pled as fact that Ms. Hanchett was also observed by LPN Hay on December 6. *See* Doc. 1, ¶ 65

[3] Plaintiff's Amended Complaint omits the statement previously pled as fact that upon observing Ms. Hanchett, LPN Doto called additional females for assistance, called 911, and attempted CPR. Doc. 1, ¶¶ 83; 85.

and, as a result, created and drafted a treatment plan that included placing Ms. Hanchett on suicide watch for her own protection "as she presented to be a threat to herself and others due to her defiance;" referring her to security; and referring her to psychiatrist Jawaun Lewis, M.D., for a mental health evaluation; (2) Ms. Hanchett was also observed by LPN Hay on December 6; (3) Ms. Hanchett was observed by LPC Myles-Henderson for a fourth time on December 7; (4) and it was noted by Charge nurse Amanda Smith, LPN noted Ms. Hanchett was cleared to move to medical housing on December 7; (5) following her evaluation, LPN Kariuki contacted a higher-level provider and obtained orders from Nurse Practitioner Becky Pata to "give Gatorade BID x 5 days" and monitor Mrs. Hanchett drinking water; and (6) upon observing Ms. Hanchett, LPN Doto called additional females for assistance, called 911, and attempted CPR. *See* Doc. 1, ¶¶ 28-29; 31; 38; 40; 42-48; 50-51; 54; 57-58; 63; 65-66; 68-69; 72-74; 76-77; 79-81; 83; 85-86.

25. Plaintiff contends Ms. Hanchett died of heart failure with other significant conditions contributing to her death being psychosis with auditory and visual hallucinations and severe dehydration. *See* Doc. 57, ¶ 140.

26. Plaintiff alleges "Turn Key had a policy, practice or custom of inadequately staffing county jails, including the Cleveland County Jail, with undertrained and underqualified medical personnel who are ill-equipped to evaluate, assess, supervise, monitor or treat inmates, like Ms. Hanchett, with complex and serious medical and mental health needs, including heart disease, bipolar disorder, schizophrenia, catatonia, dehydration, and malnutrition." *See* Doc. 57, ¶ 281.

27. While Plaintiff alleges the care and treatment provided to Ms. Hanchett was inadequate, Plaintiff has not properly alleged any specific acts and/or omissions of Defendant Turn Key which constitute an alleged act of deliberate indifference.

## ARGUMENT & AUTHORITIES

### I. STANDARD OF REVIEW

Plaintiff fails to state a claim upon which relief may be granted. In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (citations omitted). Further, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. For a complaint to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 1940 (2009). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). A plaintiff's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

## II. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS PLAINTIFF HAS FAILED TO STATE PROPER CLAIMS ARISING UNDER FEDERAL LAW.

### 1. Plaintiff has failed to allege facts sufficient to show Turn Key providers were deliberately indifferent to a substantial risk of serious harm to Ms. Hanchett.

Plaintiff asserts claims specifically against Defendant Turn Key arising under 42 U.S.C. § 1983 (hereinafter "§ 1983") for the alleged violation of Shannon Hanchett's constitutional right to receive adequate health care in violation of the Eighth and Fourteenth Amendments of the United States Constitution. *See* Doc. 57, ¶¶ 318-323. In order to state a cognizable claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" that offend "'evolving standards of decency' in violation of the Eighth Amendment" – not the result of mere negligence. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Farmer v. Brennan*, 511 U.S. 825, 826 (1994)(In order to "state a claim under § 1983, an individual must allege misconduct that is 'so egregious as to subject the aggrieved individual to a deprivation of constitutional dimensions.'"). In relation to such claims, Defendant Turn Key herein adopts and pleads, as though set out word for word herein, the Motions to Dismiss Plaintiff's Amended Complaint filed on behalf of Defendants LPC Myles-Henderson, LPN Kariuki, and Jawaun Lewis, DO and, likewise, requests dismissal of such claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

Further, it is permissible for this Court to take judicial notice of the facts previously alleged by Plaintiff in his original Complaint, but omitted in his Amended Complaint.

*Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1184–85 (D.N.M.)(facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.) *See* Doc. 1 ¶¶ 28-29; 31; 38; 40; 42-48; 50-51; 54; 57-58; 63; 65-66; 68-69; 72-74; 76-77; 79-81; 83; 85-86. Plaintiff must be estopped from omitting facts previously alleged by Plaintiff to be true, in an attempt to formulate a claim of deliberate indifference where this Court has previously found that Plaintiff has failed to state such a claim. *Id.* Deleting facts in an Amended Complaint where this Court has previously ruled "Plaintiff has not alleged sufficient facts to show that any Turn Key employee, alone or in combination with other Turn Key employees, was deliberately indifferent to Ms. Hanchett's health and safety" is improper and at odds with the correct mechanism to attempting to set forth a plausible, cognizable claim under Federal law. *See* Doc. 55, p. 5; Federal Rule of Civil Procedure 12(b)(6); *Bell Atl. Corp.*, 550 U.S. 544 (2007); *Ashcroft,* 556 U.S. 662 (2009); *Schneider*, 493 F.3d 1174 (10th Cir. 2007). Plaintiff cannot attempt to create a cause of action where there is none and Plaintiff should not benefit from such improper tactics. *Id.* Plaintiff cannot attempt to save his case and contrive a cause of action by omitting allegations concerning the care and treatment provided to Ms. Hanchett, but then allege she was not provided care. Such is offensive to this Court and completely at odds with the purpose of the Court's extension of leave to file an Amended Complaint – to allow Plaintiff to include additional or new claims that may nudge his claim over the threshold of plausible rather than delete previous allegations that are unhelpful to Plaintiff's claims in an attempt to circumvent another proper dismissal of Plaintiff's claims. *Id.*

**2. Plaintiff has failed to allege facts sufficient to state a constitutional claim against Defendant Turn Key based on a Municipal Liability theory.**

While Plaintiff has deleted facts previously pled to this Court relating to the care and treatment provided to Ms. Hanchett and Plaintiff's underlying claim of deliberate indifference, as it relates to Plaintiff's claim of municipal liability Plaintiff has failed to set forth any additional facts that would support this Court not, again, dismissing such claim. Plaintiff has merely copied and pasted his previously stated facts concerning Plaintiff's allegation of municipal liability in hopes that this Court would re-read them and find that the Court's prior decision, based on these same facts was incorrect. *Compra* Doc 1, ¶¶ 91-237 and Doc 57, ¶¶ 144-292. Defendant simply requests this Court stick to its prior, and correct ruling, based on these exact same facts set forth by Plaintiff related to this claim and, again, hold that Turn Key is not liable under either theory of municipal liability. *See* Doc. 55, p. 5.

Despite Plaintiff deleting facts previously pled related to the care and treatment of Ms. Hanchett in order to concoct an underlying claim of deliberate indifference, Plaintiff's claim of municipal liability must still fail, again, as this Court previously held there was insufficient evidence to subject Turn Key to liability based upon an alternative theory of vicarious liability and Plaintiff has set forth zero additional facts to support a differing ruling this time. *See* Doc. 55; *Compra* Doc 1, ¶¶ 91-237 and Doc 57, ¶¶ 144-292.

However, as set forth here again, Courts have routinely held there is no vicarious liability for § 1983 claims and the language of § 1983 cannot be read to impose vicarious liability based solely on the existence of an employer-employee relationship. *Monell v.*

*New York City Dept. of Social Servs.*, 436 U.S. 658, 691-92 (1978). There are effectively two manners in which Turn Key, a private company, can be found to have been deliberately indifferent: (1) under the *Monell* theory of liability or (2) the *Crowson* exception, or systematic theory of liability. *Id*; *Crowson v. Wash. Cty. State of Utah*, 983 F. 3d 1166, 1191-92 (10th Cir. 2020).

To establish municipal liability under either theory of liability, a plaintiff must establish: (1) an official policy or custom; (2) causation; and (3) deliberate indifference." *Crowson*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020). Specifically, deliberate indifference in the municipal liability context requires that the violation of a person's constitutional rights be "the plainly obvious consequence" of a given policy, or that the violation be "highly likely" to be inflicted with a likelihood of recurrence. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 411-12 (1997). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)). Notably, a plaintiff must also establish an underlying constitutional violation actually occurred. *Id.* at 1186 ("[A] a claim under § 1983 against . . . a municipality cannot survive a determination that there has been no constitutional violation."); *See also Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985)).

Differing under the two theories, under a *Monell* Theory of municipal liability, Plaintiff must demonstrate Turn Key's policies and/or customs were the moving force

behind or caused an employee or agent to commit the specific underlying constitutional violation complained of. *Monell,* 436 U.S. 658 (1978). Under the *Crowson* Exception, or systematic theory of municipal liability, Plaintiff is not required to prove an underlying deprivation by any specific individual, but may premise a claim of municipal liability upon "gross deficiencies in staffing, facilities, equipment or procedures" such that "the inmate is effectively denied access to adequate medical care." *Crowson*, 983 F.3d 1166, 1184 (10th Cir. 2020) citing *Garcia*, 768 F.2d at 308. Here, Plaintiff has, again, failed to establish Turn Key is liable under either theory.

**a. Plaintiff has failed to establish Defendant Turn Key was liable under the *Monell* Theory of Municipal Liability.**

In order to establish liability under the first manner – the *Monell* theory of liability – a plaintiff is required to prove that an established specific policy, procedure, or custom caused the inmate to suffer a constitutional deprivation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *Whitesel v. Sengenberger*, 222 F.3d 861, 870 (10th Cir. 2000). That is because a core principle of *Monell* liability is that municipal entities are only liable for their own actions; they are not and cannot be held vicariously liable for the actions of their employees. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

Specifically, under the municipal theory of liability, it has been held by the Supreme Court that municipalities and other governmental bodies may be liable under § 1983 only if they are found to be the official, final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)("[m]unicipal liability attaches only where the decision maker

possesses final authority to establish municipal policy with respect to the action ordered."); *See also Monell*, 436 U.S. at 694; *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). In order to be held as a final policymaker, a plaintiff must prove (1) the entity "executed a policy or custom" that (2) caused the plaintiff "to suffer deprivation of constitutional or federal rights." *Whitesel,* 222 F.3d at 870. The Tenth Circuit has held, an official policy or custom can be: (1) a formal policy, (2) an informal custom amounting to a persistent, widespread practice that is so permanent and well-settled as to constitute a custom with the force of law, (3) decisions of employees with final policymaking authority, (4) the ratification by such final policymakers of the decisions of subordinates to whom authority was delegated subject to those policymakers' review and approval, or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Crowson*, 983 F.3d at 1184 (citing *Waller*, 932 F.3d at 1283).

Accordingly, to prevail against this Defendant under the *Monell* theory, Plaintiff must plausibly plead there was an official Turn Key policy or custom which caused or was the moving force of the specific underlying constitutional violation complained of. *Schneider*, 717 F.3d at 770*; Estate of Burgaz v. Bd. of Cty. Comm'rs for Jefferson Cty.*, *Colorado*, 30 F.4th 1181, 1189 (10th Cir. 2022)(citing *Quintana*, 973 F.3d at 1034); s*ee also Farmer*, 511 U.S. at 828. So, to establish causality, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Id.* (internal citations omitted). In other words, in instances such as this, where Turn Key has not been alleged to have directly caused an injury, but instead that its policies and/or

customs caused an employee or agent to do so, plaintiff must demonstrate a direct causal link between the municipal action and the deprivation of federal rights to establish deliberate indifference under the *Monell* theory of municipal liability. *Id.* In doing so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee[s]" to ensure municipal liability is not supported by a basis of vicarious liability. *Id.* Said simply, in the matter at hand, to prevail on her § 1983 claim, Plaintiff must plausibly plead Ms. Hanchett's death was directly caused by one of the identified official policies or customs of Turn Key or that one of the identified policies or customs of Turn Key was a moving force behind Ms. Hanchett's death.

In his Amended Petition, Plaintiff alleges the exact same failure by Turn Key as he alleged in his original Complaint with the exact same underlying facts to support this claim of deliberate indifference. *Compra* Doc 1, ¶¶ 91-237 and Doc 57, ¶¶ 144-292. Again, Plaintiff alleges Turn Key implemented, maintained, and/or adopted a custom, practice, and/or policy at CCJC of (1) reducing the cost of providing medical and mental health care service in a manner that would increase its profit margin; (2) providing inadequate guidance, training, and supervision to its medical staff regarding the appropriate standards of care with respect to inmates with complex or serious medical and mental health needs including failing to adequately access and treat obvious and known symptoms of emergent and life-threatening conditions, regularly take vital signs, and sending inmates to an outside medical facility; (3) inadequately staffing CCJC with undertrained and underqualified medical personnel who are ill-equipped to evaluate, assess, supervise, monitor, or treat

patients with complex or serious medical and mental health needs; and (4) intentionally omitting information about inmates' negative health outcomes from written documentation/communication. *Compra* Doc 1, ¶¶ 93, 99-101; 105-106; 226; 231; Doc. 57, ¶¶ 146; 152-154; 159-160; 281; 286.

These, apparently, are not written or formally endorsed policies of Turn Key but Plaintiff argues they were informal customs or practices. *Id.* In order to subject Turn Key to liability for a constitutional deprivation pursuant to the *Monell* theory, Plaintiff must first properly allege at least one of these alleged customs or practices actually existed and was implemented by Turn Key at CCJC during the time Ms. Hanchett was an inmate receiving care. In an attempt to do this, Plaintiff, again, discussed the same exact 19 incidents involving alleged claims of the denial of medical care involving Turn Key; however, only 7 of these cases involved inmates who were incarcerated at CCJC and, of those 7, only 5 occurred before the care at issue. *See* Doc. 57, ¶¶ 144-292. Care provided to inmates at other facilities or care provided after the dates of care at issue are peripheral and inconsequential to prove the policies or customs that were present at CCJC in 2022 and should be disregarded.

As previously pointed out, of the 5 cases that occurred prior to Ms. Hanchett, one from as far back as 2014, all involve facts that are incomparable to those at issue here, as the cases cited by Plaintiff involve inmates who did not continually refuse to consent to medical care, like Ms. Hanchett, but rather allegedly involve inmates who, based on Plaintiff's own allegations, were cooperative and informed Turn Key providers of their past medical history and medications. *See* Doc. 57, ¶¶ 144-292. The cases cited by Plaintiff

also include instances where the inmates were allegedly not referred to or seen by a physician at all during their incarceration, which is also unlike Ms. Hanchett who was evaluated by psychiatrist Dr. Jawaun Lewis. *Id.*

Also, notably, none of these instances have concluded with a finding there was a constitutional violation of the inmates' rights. Plaintiff can point to no cases involving an actual finding of inadequate supervision/training/staffing; intentionally reducing costs of health services; or intentionally omitting health information in documentation related to care provided to inmates at CCJC in 2022. As a result, Plaintiff has failed to adequately allege these practices at CCJC were "so permanent and well settled as to constitute a custom…with the force of law" as required to establish liability under a *Monell* Theory of liability. *Waller*, 932 F.3d 1277; *see also Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C. Cir. 1987) ("One instance, however egregious does not a pattern or practice make.").

To satisfy the second element of the *Monell* theory of liability, Plaintiff must point to more than the alleged actions of an employee of Turn Key, he must identify a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). Here, there are no allegations Turn Key was the official policymaker, only that Turn Key was only "responsible, **in part,** for creating, implementing, and maintaining policies, procedures, and protocols. . ." *See* Doc. 57, ¶ 3. There is no allegation as to who or what entity had the actual final policymaking authority or if the alleged policymaker for Turn Key had actual or constructive knowledge the alleged policies would result in serious risk, let alone that the alleged policymaker was deliberately

indifferent to such risk.

The third element of municipal liability requires that Plaintiff adequately plead a direct causal link between the municipal policy and the [alleged] constitutional deprivation. *Whitesel,* 222 F.3d at 870. This requires the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). As a result, plaintiffs must plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411. Again, simple or even heightened negligence, is insufficient to meet the deliberate indifference requirement. *Id.* at 407.

Plaintiff has, again, failed to set forth facts sufficient to support the notion these alleged practices and/or customs, if even present at CCJC at the time of Ms. Hanchett's incarceration, directly caused her death. In an attempt to manufacture a causal link, Plaintiff makes numerous contradictory statements throughout the Amended Complaint. For example, in one paragraph Plaintiff alleges Mrs. Hanchett was examined by psychiatrist Dr. Jawaun Lewis but then turns around and states Turn Key providers failed to refer Ms. Hanchett to physician. *See* Doc. 57, ¶¶ 106; 157. Similarly, Plaintiff has attempted to make this Court believe LPC Myles-Henderson did not assess, evaluate, or provide care to Ms. Hanchett until December 4; however, as Plaintiff previously pled as fact, LPC Myles-Henderson first evaluated Ms. Hanchett on November 30 and performed an assessment of Ms. Hanchett where she refused to inform LPC Myles-Henderson of any medications

prescribed to her, including any psychotropic medications. and, as a result, created and drafted a treatment plan that included placing Ms. Hanchett on suicide watch for her own protection "as she presented to be a threat to herself and others due to her defiance;" referring her to security; and referring her to psychiatrist Jawaun Lewis, M.D., for a mental health evaluation. *See* Doc. 1, ¶ 26-31; 33. Plaintiff likewise attempts to allege it was Turn Key that made an alleged decision to not provide Ms. Hanchett medication but, based on Plaintiff's own allegations, it was Ms. Hanchett who repeatedly withheld any information related to any medication allegedly prescribed to her and continually refused to consent to medical treatment from Turn Key providers when attempting to obtain any such information. *See* Doc. 57, ¶¶ 22-25; 46; 60; 64; 72; 74; 79; 80; 93; 97-100; 103; 106-107; 109; 130-131. Plaintiff also makes the contradictory statements that Turn Key was allegedly understaffed with a custom or practice in place to intentionally omit information about inmates' negative health outcomes from written documentation/communication; however, Plaintiff's Amended Complaint shows Ms. Hanchett was assessed, evaluated, and/or observed, on at least fourteen (14) separate occasions, by at least six (6) different providers but had only informed any provider she suffered from lupus and bipolar disorder but failed to report to any provider, at any time, of any medication(s) prescribed to her, including any psychotropic medication. *See* Doc. 57, ¶¶ 22-25; 46; 60; 64; 72; 74; 79; 80; 93; 97-100; 103; 106-107; 109; 130-131. It cannot logically be argued at least 14 different chart entries related to Ms. Hanchett's care, as set forth in Plaintiff's seventy-three (73) page Amended Complaint, are facts to support the allegation a custom or practice of intentionally omit information about inmates' negative health outcomes from written

documentation/communication, inadequate staffing, or reducing costs to increase profit margins was actually in place in CCJC at the time of Ms. Hanchett's incarceration. *Id.* Criticisms by the Plaintiff regarding the timing of assessments, quality of those assessments, and the medical or nursing decisions made are all criticisms that sound in tort and do not rise to the level of a constitutional deprivation.

Further, Plaintiff's allegation Turn Key was inadequately staffed with undertrained and underqualified is conclusory at best and represent nothing more than a "formulaic recitation of the elements of a cause of action" which are insufficient to meet the pleading standard set forth by *Twombly*, as there are no corresponding allegations or inferences therefrom set forth to support the allegation Turn Key providers were undertrained and underqualified or otherwise acting outside of their scope of practice. *Twombly*, 550 U.S. at 555 (2007); *see also* Okla. Stat. Ann. tit. 59, §§ 567.3a(4); 567.3a(6);1902(3); Okla. Admin. Code § 485:10-15-6(b). Without some minutiae of supporting facts, it cannot be reasonably concluded that such a bald assertion is plausible on its face as required by *Twombly* rather than just the mere say-so of Plaintiff. Also, the Tenth Circuit has set forth that a failure-to-train claim may not be maintained without a showing of a constitutional violation by the allegedly un-, under-, or improperly trained individual. *Williams v. Denver*, 153 F.3d 730 (10th Cir. 1998); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (stating that "failure[-]to[-]train claims . . . require[] a predicate showing that the officers did in fact" violate the decedent's rights). It follows that for Plaintiff to succeed in establishing an official policy or custom regarding inadequate training was in place during that time at issue, Plaintiff is required to allege, with

specificity, which individual was allegedly insufficiently or inadequately trained *and* establish that specific individual violated Ms. Hanchett's constitutional rights. Further, to prevail on this claim, Plaintiff must also establish that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Waller*, 932 F.3d at 1284, citing *Brown*, 520 U.S. 397 at 405. Plaintiff has wholly failed to set forth facts sufficient to support and such specific claim but rather merely provided broad and generalized allegations that fall short of the pleading requirements for a failure-to-train claim.

In this case, Plaintiff has failed to set forth the alleged customs and/or practices were present at CCJC in 2022; Turn Key had "final policymaking authority;" or that the harm alleged resulted from any of the specific customs and/or practices. Similarly, there are no properly supported allegations that Turn Key was deliberately indifferent to the risk posed by its alleged failure to train its employees. Finally, as addressed herein, Plaintiff's Amended Complaint fails to plead facts sufficient to support the finding of an underlying constitutional deprivation as to any individual medical provider. Pursuant to the authorities above, without an underlying constitutional violation by the allegedly undertrained employee, there cannot be a viable failure-to-train claim under the municipal theory of liability. In sum, Plaintiff has failed to properly allege what is required to subject Turn Key to liability for deliberate indifference pursuant to the *Monell* theory of liability. For these reasons, Defendant's Motion should be granted and Plaintiff's § 1983 claim should be dismissed.

**b. Plaintiff has failed to establish Turn Key was liable under the *Crowson*, *aka* the Systematic Failure, Theory of Municipal Liability.**

In addition to the *Monell* Theory of municipal liability, the Tenth Circuit recently provided a *limited exception* to this previously well-established law, which allows a plaintiff to establish liability on a municipality in a situation where there is no single individual who commits a constitutional violation. *See Crowson*, 983 F. 3d 1166, 1191-92 (10th Cir. 2020). Said another way, the *Crowson* exception can apply when no single individual violated the constitutional rights of an inmate, but rather, when the sum of multiple officers' actions taken pursuant to an official policy or custom results in a constitutional violation. *Id*. at 1191. ("That is, the municipality may not escape liability by acting through twenty hands rather than two." *Id*.) It is important to note that under both the traditional *Monell* pattern of proof and the limited *Crowson* exception, there must be an underlying constitutional violation (regardless of whether at the hands of an individual or the system itself) to be a viable § 1983 claim. *Crowson*, 983 F.3d at 1186.

Defendant contends there is no basis to allow claims to proceed against a municipality under both the traditional *Monell* theory and the *Crowson* exception. Rather, the *Crowson* exception is exactly that—an *exception* which *only* applies when "the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Estate of Burgaz*, 30 F. 4th 1181, 1190 (10th Cir. 2022) (citing *Garcia.*, 768 F.2d 303, 310 (10th Cir. 1985)). *See also Crowson*, 983 F.3d at 1191 ("[*Crowson/]Garcia* remains a limited exception where the alleged violation occurred as a result of multiple officials' actions or inactions.")(emphasis

added). However, even if a plaintiff is proverbially allowed to attempt to pursue a claim of municipal liability under both the traditional *Monell* theory and the limited *Crowson* exception, Plaintiff has failed to state facts sufficient to support a claim of municipal liability for deliberate indifference through application of the *Crowson* exception. This is because Plaintiff has specifically alleged there *were* specific individuals affiliated with Turn Key who could have prevented the alleged deprivation of Ms. Hanchett's constitutional rights, and these specifically identified individuals failed. *See* Doc. 57, ¶¶ 4-7; 318-323. This is not akin at all to the situation the Tenth Circuit created a remedy for with the *Crowson* and *Garcia* decisions – where a municipal policy or custom "may be unconstitutional precisely because [it] fail[s] to ensure that any single officer is positioned to prevent the constitutional violation." *Crowson* at 1191.

As stated above, in order to establish a claim of municipal liability plaintiff must establish: (1) an official policy or custom; (2) causation; and (3) deliberate indifference" and under a *Crowson* Theory of liability, Plaintiff may premise a claim of municipal liability upon "gross deficiencies in staffing, facilities, equipment or procedures" such that "the inmate is effectively denied access to adequate medical care." *Crowson*, 983 F.3d 1166, 1184 (10th Cir. 2020) (quoting *Quintana*, 973 F.3d 1022, 1034 (10th Cir. 2020); *Garcia*, 768 F.2d 303.

The case at hand does not support such theory as Plaintiff's Amended Complaint states Ms. Hanchett was assessed, evaluated, and/or observed, on at least fourteen (14) separate occasions, by at least six (6) different providers. *See* Doc. 57, ¶¶ 22-25; 46; 60; 64; 72; 74; 79; 80; 93; 97-100; 103; 106-107; 109; 130-131. Plaintiff's allegations are that

the multiple individual medical providers who encountered Ms. Hanchett failed in their decision-making, but do not support a theory there were any issues with staffing or that Turn Key failed to have a system in place to facilitate an encounter between Ms. Hanchett and a Turn Key medical provider. The same is true with facilities and equipment available at CCJC, as Plaintiff's Amended Complaint evidences CCJC had a medical delivery system and corresponding medical equipment that would be expected to be encountered in a similar jail.

Finally, as addressed above, Plaintiff's criticism, as set forth in the Complaint, is not that Turn Key had a lack of medical policies and procedures, but rather, Plaintiff is critical of specific practices and/or customs alleged to be held by Turn Key. *See* Doc. 57, ¶¶ 146; 152-154; 159-160; 281; 286. Also dispositive is the fact that Plaintiff has not set forth facts sufficient to support a claim that any alleged deficiencies in staffing, facilities, equipment, or procedures of Turn Key caused or contributed to the alleged constitutional harm.

Plaintiff has failed to plead facts sufficient to establish that any policy, custom, or practice of Turn Key was the "moving force" behind any alleged constitutional deprivation under either the *Monell* Theory of liability or the *Crowson* Exception. Thus, Plaintiff has, again, failed to state a claim for municipal liability under § 1983 against Turn Key and, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claims against Turn Key must be dismissed.

**3. Plaintiff has failed to plead facts sufficient to support a claim of unconstitutional conditions of confinement as to Turn Key.**

Plaintiff also alleges pursuant to 42 U.S.C. § 1983, Defendant Turn Key violated Shannon Hanchett's constitutional right to receive humane conditions of confinement in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. In order to plead a claim of unconstitutional conditions in a prison setting, Plaintiff must establish an inmate was unquestionably deprived of the minimal civilized measures of life's necessities, but conditions that are restrictive or even harsh are not unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, (1981) (citing *Hutto v. Finney*, 437 U.S. 678, (1978)). However, here, Plaintiff has set forth no facts that support the contention Turn Key was responsible for the conditions of Cleveland County Jail. Rather, the opposite, Plaintiff has pled Turn Key was only contracted with the jail with the limited responsibility of "providing medical services, supervision, and medication to Ms. Hanchett while she was in custody at CCJC and for creating, implementing and maintaining policies, practices, and protocols that govern the provision of medical and mental health care to inmates at the Jail, and for training and supervising its employees." *See* Doc. 57 ¶ 3. Turn Key was in no way responsible for providing inmates like Ms. Hanchett with meals and water, but to the contrary, Plaintiff has stated on occasions that a CCJC staff member either delivered Ms. Hanchett food (*see* Doc. 57 ¶¶ 34, 37, 46, 57, 63) or had a jug(s) of water to provide water to inmates. *See* Doc. 57 ¶¶ 40, 45, 68, 70-71, 75-78, 95, 101-102, 110, 112. Nowhere does Plaintiff plead Turn Key was responsible or involved in providing Ms. Hanchett with food or had control over the jug(s) of water available for inmates or had knowledge the CCJC staff responsible and with control over the water jugs refused to provide Ms. Hanchett with water. *See* Doc. 57 ¶¶ 40, 45, 68, 70-71, 75-78, 95, 101-102, 110, 112. Any allegations or

claims that non-party detention officers, who were responsible for providing Ms. Hanchett food and water, failed to do so, either negligently or deliberately cannot impute any liability or knowledge of that alleged failure on this Defendant. Without the knowledge or control, Turn Key cannot be held liable for a constitutional deprivation related to a claim based on the conditions of the Cleveland County Jail and where Plaintiff has specifically pled Turn Key was **not** responsible for such. *See* Doc. 57 ¶ 3.

## III. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS PLAINTIFF HAS FAILED TO STATE PROPER CLAIMS ARISING UNDER OKLAHOMA LAW.

### 1. Defendant Turn Key remains immune from Plaintiff's state law tort claims under the Oklahoma Governmental Tort Claims Act.

Given the factual allegations pled in Plaintiff's Amended Complaint, under Oklahoma's Governmental Tort Claims Act ("GTCA"), Turn Key is considered an "employee" of the state and immune from liability for tort claims. Section 152.1 of Title 51 of the Oklahoma Statutes provides:

> The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

Okla. Stat. Ann. tit. 51, § 152.1(A). The GTCA goes on to state, "licensed medical professionals under contract with the city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies' are considered "employees of the state" for purposes of the GTCA. Okla. Stat. Ann. tit. 51, § 152(b)(7). The Oklahoma Supreme Court has explicitly extended such immunity to a jail's

health care contractor such as Turn Key:

> Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the GTCA by virtue of sections 152(7(b), 153(A), and 155(25). *See* 51 O.S.Supp.2015 § 152(7)(b) ("As used in The Governmental Tort Claims Act: . . . 7. 'Employee' means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time basis. . . b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed: . . . (5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections, [and] . . . (7) licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies."); *id*. §§ 153(A), 155(25). We have not been asked whether Turn Key Health, LLC or its staff are "employees" under section 152(7)(b), but have assumed they are for purposes of answering the questions certified to us.

*Barrios v. Haskell Cty. Pub. Facilities Auth.*, 2018 OK 90, ¶ 5, 432 P.3d 233 (emphasis added). As the Oklahoma Supreme Court explained, "in cases including tort claims against the State and state actors, the Court begins with the understanding that the State is statutorily immune from tort suit unless the Legislature has expressly waived that immunity." *Id*. at ¶ 8.

Here, Plaintiff has alleged Turn Key acted negligently in the rendering of medical care and treatment to Ms. Hanchett at CCJC. *See* Doc. 57, ¶¶ 351-358. Plaintiff straightforwardly admits Turn Key was under contract with CCJC to provide medical staff that would deliver medical services at CCJC and provided medical services pursuant to this contract. *See* Doc. 57 ¶¶ 3; 144; 146-149. Plaintiff further states, Turn Key was endowed by the Cleveland County/Cleveland County Sherriff's Office with powers or functions

governmental in nature, such that **Turn Key became an instrumentality of the State**. *See* Doc. 57 ¶ 3. It remains clear that, at all relevant times, Turn Key provided services to Ms. Hanchett while acting as health care contractors at CCJC. *Id.* Pursuant to the Oklahoma Supreme Court's ruling, immunity afforded by the GTCA applies to correctional health care contractors, such as Turn Key, as well as such contractors' employees, as such contractors are considered "state actors;" thus, there is no question that Turn Key's employees are insulated from liability in tort pursuant to the GTCA based on Plaintiff's own allegations confirmed in her Complaint. *Barrios.*, 2018 OK 90 at ¶ 5.

The Oklahoma Court of Civil Appeals ("COCA") recently reaffirmed this Oklahoma Supreme Court ruling, which likewise acts to reaffirm voluminous previous opinions provided by Oklahoma Courts as correct interpretations of the law. *Martin v. Armor Corr. Health Serv's, Inc.*, Case No. 120, 422, p. 8-10 (OK CIV APP Feb. 27, 2024)[4]; *see also Nayebyazdi v. Turn Key*, Case No. 119,652, p. 8-9 (OK CIV APP Oct. 14, 2021); *Strain v. Armor Corr. Health Care Serv's., Inc.*, No. 19-CV-527-JED-FHM, 2020 WL 5026548 (N.D. Okla. Aug. 25, 2020)(Dismissing defendant's state law negligence claims on grounds that Armor is immune from liability under the GTCA); *Thompson v. Norman Reg'l Hosp.*, CIV-19-113-SLP (W.D. Okla. Mar. 11, 2020); *Espinosa Hernandez v. Armor Corr. Health Serv's., Inc.*, 2019 WL 3069430, *8 (W.D. Okla. Mar. 11, 2020); *Thompson*

[4] Contemporaneously with the *Martin* Opinion, COCA also released an opinion that is at odds with the Oklahoma Supreme Court's guidance and all other opinions provided by COCA, the Northern District of Oklahoma, and the Western District of Oklahoma regarding the interpretation and application of the GTCA. *Sanders v. Turn Key*, Case No. 121,589 (OK CIV APP March 1, 2024). In response to such, Turn Key will be seeking a rehearing or an appeal to the Oklahoma Supreme Court related to this issue.

*v. Turn Key Health Clinics, LLC*, 5:19-CV-00113-SLP, (W.D. Okla. March 11, 2020) (Dismissing Plaintiff's negligence claims against Turn Key based upon the immunity under to GTCA, as provided for in *Barrios*); *Holland v. Glanz*, No. 16-CV-349-JED-JFJ, 2019 WL 4781869, at *7 (N.D. Okla. Sept. 30, 2019)("Armor is an 'employee' under the [GTCA] and, therefore, is immune from tort liability."); *Crocker v. Armor Corr. Health Serv's, Inc.*, No. 17- CV-149-TCK-FHM, 2019 WL 2146595, *4 (N.D. Okla. May 16, 2019)("Pursuant to . . .*Barrios*, the Court concludes that the Oklahoma GTCA immunity provisions apply to Armor and its employees, who are therefore exempt from tort liability for Plaintiffs' negligence claim . . ."); *Bradshaw v. Armor Corr. Health Serv's., Inc.*, No. 17-CV-615-TCK-FHM, 2019 WL 1675148, *7 (N.D. Okla. April 17, 2019) (finding the GTCA's immunity provisions apply to Armor and its employees for state law tort claims); *Burke v. Regalado*, 2019 WL 1371144, *2 (N.D. Okla. Mar. 26, 2019) (dismissing Plaintiff's state law claims of negligence based on Armor's employees' immunity pursuant to Barrios and the GTCA); *Birdwell v. Glanz*, Case No. 15-CV-304-TCK-FHM (N.D. Okla. Mar. 12, 2019) (citing Okla. Stat. tit. 51, §§ 152(14) and 155(25)); *Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-282-CVE-JFJ, 2019 WL 238153, *9 (N.D. Okla. Jan 16, 2019) (dismissing Plaintiff's state law claims of negligence based on Armor and Turn Key's immunity under the GTCA). In *Martin*, **COCA affirmed** the legal basis for the District Court's ruling, **stating: ". . . the trial court did not err by determining that Armor was considered an employee of the State and could not be sued individually for acts within the scope of employment. Title 51 O.S. 2011 § 152.1."** *See Martin*, Case No. 120, 422, p. 8-10 (OK CIV APP Feb. 27, 2024).

Based on Plaintiff's own allegations Turn Key is and should be regarded as an instrumentality of the State. *See* Doc. 57 ¶ 3. In line with such and based on COCA's guidance affirming the Oklahoma Supreme Court reliance on *Barrios,* Turn Key and its employees are entitled to immunity. *See Barrios*, 432 P.3d 233 at ¶ 18. As such, Plaintiff's state law claims against Defendant Turn Key must be dismissed at this time pursuant to Federal Rule of Civil Procedure 12(b)(6).

**2. Plaintiff's State Law Claims against Defendants are barred by the applicable Statute of Limitations.**

In the event that this Court properly grants Defendant's Motion with respect to Plaintiff's federal cause of action, Defendant would request that this Court decline to exercise supplemental jurisdiction over Plaintiff's state cause(s) of action. Alternatively, if this Court chooses to address Plaintiff's state claims against Turn Key, they too must fail as Plaintiff's claims of negligence or wrongful death are of tort and barred by the applicable statute of limitations and, thus, must be dismissed against Turn Key as a matter of law. Okla. Stat. Ann. tit. 12, § 95(A)(11)*; see Fisher v. Glanz*, No. CIV-14-678-TCK, 2016 WL 1175239, at **8-9, and 13 (N.D. Okla. Mar. 24, 2016) (ruling that any claims brought under the Oklahoma Constitution or Oklahoma state law were untimely because they were not brought within the one year statute of limitations of Section 95(A)(11) (citing *Koch v. Juber*, No. CIV-13-0750-HE, 2014 WL 2171753, at *2 (W.D. Okla. May 23, 2014)); *Allen v. Yates,* No. CIV-08-215-FHS, 2009 WL 811515, at **1-3 (E.D. Okla. Mar. 24, 2009) (dismissing all state law claims as being untimely because not filed within one-year statute of limitations); *Hicks v. Whetsel*, No. CIV-16-5532-M, 2016 WL 6459809, at ** 2, 4-5

(W.D. Okla. Oct. 31, 2016) (ruling that all state law claims, despite being brought along with § 1983 claims, are time-barred by the one-year statute of limitations).

At the very latest, Plaintiff's state law claim accrued on December 8, 2022 – the date Ms. Hanchett allegedly died and, consequently, the statute of limitations to file a tort claim against Defendants expired on December 8, 2023, pursuant to Okla. Stat. Ann. tit. 12, § 95(A)(11). However, Plaintiff did not file this action until February 25, 2024, almost three (3) months after the accrual date in this case and are barred by the applicable one-year statute of limitations. *See* Doc. No. 1.

**CONCLUSION**

Plaintiff's Amended Complaint is properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiff has failed to add any additions facts sufficient to support a claim of municipal liability as to Defendant Turn Key or to set forth a claim of conditions of confinement attributable to this Defendant. Further, Defendant Turn Key is immune from Plaintiff's state law claim of wrongful death pursuant to the GTCA and such claims are barred by the applicable statute of limitations. Therefore, dismissal of Plaintiff's claims against Defendant Turn Key is, again, appropriate at this time as "Plaintiff has not alleged sufficient facts to show that any Turn Key employee, alone or in combination with other Turn Key employees, was deliberately indifferent to Ms. Hanchett's health and safety." *See* Doc. 55, p. 5.

WHEREFORE, Defendant Turn Key Health Clinics, LLC prays this Court grant this Motion and dismiss this action in its entirety.

Respectfully submitted,

*s/ Meilani C. Kaaihue*

Sean P. Snider, OBA #22307
Anthony C. Winter, OBA #32148
Meilani C. Kaaihue, OBA #33931
JOHNSON HANAN VOSLER
HAWTHORNE & SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: 405.232.6100
Facsimile: 405.232.6105
ssnider@johnsonhanan.com
awinter@johnsonhanan.com
mkaaihue@johnsonhanan.com
*Attorneys for Defendant Turn Key Health Clinics, LLC; Diana Myles-Henderson, LPC; and Natasha Kariuki, LPN*

CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*/s/ Meilani C. Kaaihue*
Meilani C. Kaaihue