## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

DANIEL HANCHETT, as Personal
Representative of the Estate of Shannon
Hanchett, Deceased,

      Plaintiff,

v.

SHERIFF OF CLEVELAND COUNTY,
et al.,

      Defendants.

Case No. 24-cv-87-G

_____

## DEFENDANT JEWEL JOHNSON, LPN's REPLY TO
## PLAINITTF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

_____

COMES NOW, Defendant Jewel Johnson, LPN (hereinafter, "Defendant" or "LPN Johnson"), and, pursuant to LCvR7.1(i), provides the following reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss.

## ARGUMENTS & AUTHORITIES

### I.    STANDARD OF REVIEW

*Bell Atl. Corp. v. Twombly*, which answers the antecedent question of what a plaintiff must plead in order to state a claim in accordance with Fed. R. Civ. P. 8(a)(2) and to survive a Rule 12(b)(6) motion, sets forth a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. 550 U.S. 544, 555-557(2007); *Ashcroft v. Iqbal* 556 U.S. 662, 663-664 (2009). The Supreme Court suggests, a court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth and disregarding such. *Ashcroft*, 556 U.S. at 664; *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012). From this starting place, it is evident Plaintiff has not nudged his claims across the line from conceivable to plausible and consequently, the Amended Complaint must be dismissed.

### II.    PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE JEWEL JOHNSON, LPN WAS DELIBERATELY INDIFFERENT TO MS. HANCHETT'S MEDICAL NEEDS.

Plaintiff's Amended Petition fails to state a claim upon which relief can granted. Plaintiff, in realizing this, regurgitates his amended complaint in an attempt to lure the

Court into an emotional trance. When Plaintiff finally does discuss the legitimacy of Defendant's motion, fourteen-pages (14) into their twenty-two (22) page document, they argue inapposite legal standards. *See* Doc. No. 97. From the outset, Plaintiff begins their substantive Response by citing to inapplicable and noncontrolling case law in an attempt to obfuscate the applicable standard. Specifically, Plaintiff cites to two cases which discuss the standards potentially applicable to *prison jailers/correctional officers* in their duty of providing "reasonable safety from serious bodily harm," typically assaults, which is separate and distinct from a *correctional health care providers* duty to provide "adequate medical care" under the Eight Amendment. *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008)(claim of deliberate indifference for failure to protect from sexual assault); *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999)(deliberate indifference claim for failure to protect from physical assault and medical needs thereafter). From the *Lopez* case, Plaintiff even cites directly from the section of the Opinion entitled "Liability for Failure to Protect." *Lopez*, 172 F.3d at 759. If Plaintiff would have read the entire *Lopez* opinion, the claim of deliberate indifference as to medical needs was further down and sets forth the correct standard applicable to such claims brought forth against correctional health care providers, which is deliberate indifference to a substantial risk of serious harm. *Lopez*, 172 F.3d at 764(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Despite what Plaintiff would like this Court to believe, the applicable standard continues to require a showing of "unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind" which is a high evidentiary hurdle. *Estelle*,

429 U.S. at 105-06; *Farmer v. Brennan*, 511 U.S. 825, 826 (1994); *Self v. Crum*, 439 F.3d 1227,1232 (10th Cir. 2006). It is not reasonableness or even negligence. *Estelle*, 429 U.S. at 104-106; *Duffield v. Jackson*, 545 F.3d 1234, 1239(10th Cir. 2008); *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803 (10th Cir. 1999); *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993); *Ledoux v. Davies*, 961 F.2d 1536, 1537(10th Cir. 1992); *El'Amin v. Pearce*, 750 F.2d 829 (10th Cir. 1984); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Jones v. McCracken*, 562 F.2d 22 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *Henderson v. Sec'y of Corr.*, 518 F.2d 694 (10th Cir. 1975); *Paniagua v. Moseley*, 451 F.2d 228(10th Cir. 1971); *Coppinger v. Townsend*, 398 F.2d 392, 392-393 (10th Cir. 1968). With regard to the subjective component of deliberate indifference, the Supreme Court has straightforwardly set forth, there must be a "sufficiently culpable state of mind," and an individual cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006)(citing *Farmer*, 511 U.S. 825, 834, 837 (1994)).

With these requirements in mind, the Tenth Circuit set forth two types of conduct which may constitute deliberate indifference involving medical treatment in a prison: (1) a complete denial or unnecessary delay in a referral; (2) a complete denial or failure to treat. *Self*, 439 F.3d at 1231-32, (10th Cir. 2006)(quoting *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000)(emphasis added); *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). The Court further clarified a claim under this framework is only actionable

where the need for additional treatment or referral to a medical specialist is obvious and the provider responds to an obvious risk with treatment that is patently unreasonable. *Id*. Where a medical professional provides a level of care consistent with the symptoms presented by the inmate, an inference of deliberate indifference is unwarranted, and the requisite state of mind cannot be met. *Id*. Specifically, absent an extraordinary degree of neglect, the subjective component is not satisfied where a provider merely exercises his considered medical judgment as to such decisions as "whether to consult a specialist or undertake additional medical testing." *Id*.; see also *Estelle*, 429 U.S. at 107 (holding the Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated); *see also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).

For example, in applying these principles, Courts have allowed a claim of deliberate indifference where a provider knew an inmate was suffering from severe chest pains yet "completely refused to assess or diagnose" the potential cardiac emergency but denied a claim where a provider set forth "a good faith effort to diagnose and treat [the inmate's] medical condition" despite failing to diagnose a heart attack. *Mata*, 427 F.3d at 755-61. This is the line between negligence and deliberate indifference – there must be complete denials/failures to provide care or unnecessary delays to place a referral to meet the high constitutional threshold, not "mere differences" in opinion over the adequacy of medical treatment. *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 (10th Cir. 2001). This distinguishable line is set forth in the very

case cited by Plaintiff, *Prince*, where zero care was provided and zero referrals were placed for the inmate, which is not comparable to the case at hand. *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033 (10th Cir. 2022).

As stated in Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 82], and in line with the litany of cases cited *supra*, to proceed on the claim of deliberate indifference, Plaintiff must have alleged that LPN Johnson had knowledge of the specific risk faced by Ms. Hanchett and knowingly and willingly disregarded that risk. In support of his allegations, Plaintiff refers to only two (2) instances in which LPN Johnson was involved in the care of Decedent. However, in his attempt to masquerade the deficiency of his pleading, Plaintiff deceptively draws these interactions out. For example, Plaintiff alleges LPN Johnson was involved in the care of Decedent on December 6 and 7. An examination of the alleged totality of LPN Johnson's interaction with Ms. Hanchett amounts to a notation that Decedent was "talking to herself" and "not responding to verbal stimuli when asked if she was okay" (Doc. No. 57, ¶ 103) and assisting in maintaining Decedent's hygiene. (*Id*. at ¶¶ 127,128). However, Plaintiff takes it upon himself to proliferate these interactions by interjecting his opinions on the alleged treatment of Ms. Hanchett. Unfortunately for Plaintiff, and to quote his response, his opinion on the care at issue does not "nudge[] [his] claims across the line from conceivable to plausible."(Doc. No. 97). Plaintiff is engulfed in the idea that LPN Johnson was "laughing at [Ms. Hanchett] and mocking her" while engaged with her. *Id*. Plaintiff, however, has no idea what was actually occurring in the video, as the video has no sound. Plaintiff again relies on his warped

6

interpretation of the care at issue and attempts to influence this Court with fantasy laden accusations. Plaintiff's interpretation of the content of the conversations is null in establishing LPN Johnson was deliberately indifferent to Ms. Hanchett. Are healthcare providers required to be silent on the job otherwise they risk being accused of violating an inmate's constitutional rights in federal court? Any reference to the conversations Defendant had with her colleagues during her shifts over the course is nothing more than a red herring and another attempt by Plaintiff to concoct support for a claim of deliberate indifference by use of sympathy. It is through these farcical conclusions Plaintiff desires to persuade this Court; however, LPN Johnson has stayed firm in relying on the facts of the care at issue which show she was not deliberately indifferent to the care of Ms. Hanchett.

Plaintiff argues that LPN Johnson "fail[ed] to treat [Ms. Hanchett's] serious medical condition properly[,]" and also "delay[ed] or refuse[d] to fulfill [her] gatekeeper role." (Doc. No. 97). Plaintiff also argues licensed professional nurses such as Defendant are limited in the care and treatment they may provide to individuals. Specifically, under Okla. Stat. Ann. tit. 59, § 567.3a(4), LPNs may evaluate individuals but may not make diagnoses or prescribe medications, treatments, or devices. Again, Plaintiff attempts to muck up the medical criterion as to the standard applicable here. Plaintiff requests this Court both heighten and limit the standard by which LPN Johnson must have operated. According to Plaintiff, Defendant must treat the condition properly but may not actually make treatment decisions. In essence, Plaintiff requests LPN Johnson drive the car from the passenger seat.

The fact remains, Plaintiff has again failed to set forth facts sufficient to support a claim of deliberate indifference. Plaintiff's allegations attest LPN Johnson acted in accordance with the exercise of her best medical judgment in treating Ms. Hanchett's medical complaints. Plaintiff's allegations merely amount to a disagreement in the care provided to Ms. Hanchett, which is a claim that sounds in negligence and, according to the U.S. Supreme Court, cannot rise to the level of a constitutional violation. Defendant simply requests this Court follow the case law precedent cited by Plaintiff which directly affirms Plaintiff's Amended Complaint does not plausibly allege a §1983 claim alleging cruel and unusual punishment and must be dismissed pursuant to Rule 12(b)(6). *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033 (10th Cir. 2022). Plaintiff has failed to set forth facts sufficient to support the allegation LPN Johnson exhibited an extraordinary degree of neglect amounting to a conscience disregard Ms. Hanchett's health and safety to the level of a sufficiently serious deprivation. As such, Plaintiff's Amended Complaint does not plausibly allege a §1983 claim alleging cruel and unusual punishment and must be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

Plaintiff's Amended Complaint is properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as Plaintiff has failed to allege facts sufficient to support a claim of deliberate indifference as to Defendant LPN Johnson. Further, Plaintiff has admitted they are not asserting claims of negligence against Defendant LPN Johnson, as such Plaintiff must be estopped from subsequently attempting to assert any such

claims. Dismissal of Plaintiff's claims against Defendant LPN Johnson is appropriate at this time.

WHEREFORE, Defendant LPN Johnson prays this Court grant this Motion and dismiss this action in its entirety.

Respectfully submitted,

s/ Meilani C. Kaaihue
Sean P. Snider, OBA# 22307
Anthony C. Winter, OBA# 32148
Meilani C. Kaaihue, OBA# 33931
JOHNSON HANAN VOSLER
HAWTHORNE & SNIDER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: 405.232.6100
Facsimile: 405.232.6105
ssnider@johnsonhanan.com
awinter@johnsonhanan.com
mkaaihue@johnsonhanan.com
*Attorneys for Defendants Turn Key Health Clinics, LLC; Jawaun Lewis; Diana Myles-Henderson, LPC; and Natasha Kariuki, LPN*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the <u>20th</u> day of November, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

/s/ Meilani C. Kaaihue
Meilani C. Kaaihue